# Assistance of Counsel in Removal Proceedings (I)

The Constitution does not confer a constitutional right to effective assistance of counsel in removal proceedings, because the alien has no constitutional right to counsel, including government-appointed counsel, in the first place.

Although the Constitution does not entitle an alien to relief for his lawyer's mistakes, the Department may, in its discretion, allow an alien to reopen removal proceedings based on the deficient performance of his lawyer.

In extraordinary cases, where a lawyer's deficient performance likely changed the outcome of an alien's removal proceedings, the Board may reopen removal proceedings notwithstanding the absence of a constitutional right to such relief.

January 7, 2009

OPINION IN REMOVAL PROCEEDINGS*
MATTER OF ENRIQUE SALAS COMPEAN, RESPONDENT
MATTER OF SYLLA BANGALY, RESPONDENT
MATTER OF J-E-C- ET AL., RESPONDENTS

On August 7, 2008, pursuant to 8 C.F.R. § 1003.1(h)(1)(i) (2007), I directed the Board of Immigration Appeals ("Board") to refer to me for review its decisions in the above-captioned cases, and I invited the parties and any interested amici to submit briefs addressing the questions I planned to consider on certification.

For the reasons set forth in the accompanying opinion, I affirm the Board's orders denying reopening in the certified cases and overrule the Board's decisions in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and *Matter of Assaad*, 23 I. & N. Dec. 553 (BIA 2003), to the extent those decisions are inconsistent with the legal conclusions and administrative framework set forth in the opinion.

\* \* \* \* \*

The Supreme Court has recognized constitutional claims for ineffective assistance of counsel only where a person has a constitutional right to a

---

\* Editor's Note: This opinion was subsequently vacated by *Matter of Compean, Bangaly & J-E-C-*, 25 I. & N. Dec. 1 (Att'y Gen. 2009); *Assistance of Counsel in Removal Proceedings (II)*, 33 Op. O.L.C. 57 (2009) (Holder, Att'y Gen.).

government-appointed lawyer. In contrast to a defendant in a criminal case, an alien has no right—constitutional or statutory—to government-appointed counsel in an administrative removal proceeding. *Compare* Immigration and Nationality Act ("INA" or "Act") § 240(b)(4)(A), 8 U.S.C. § 1229a(b)(4)(A) (2006) (providing that an alien has a "privilege of being represented, at no expense to the Government, by counsel of the alien's choosing"), *and* INA § 292, 8 U.S.C. § 1362 (2006), *with* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."), *and Gideon v. Wainwright*, 372 U.S. 335 (1963). The question before me is whether, notwithstanding the absence of a constitutional right to a government-appointed lawyer, there is nevertheless a constitutional right to effective assistance of counsel in removal proceedings. More specifically, the question is whether the Constitution entitles an alien who has been harmed by his lawyer's deficient performance in removal proceedings to redo those proceedings.

In *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), the Board of Immigration Appeals ("Board") responded to an alien's constitutional claim of ineffective assistance of counsel by assuming, consistent with the earlier rulings of two federal courts of appeals, that an alien "may" have a constitutional right to effective assistance of counsel under the Due Process Clause of the Fifth Amendment. *Id*. at 638. Having thus accepted the potential existence of such a right, the Board's decision established three threshold requirements—commonly known as the "*Lozada* factors"—that an alien must satisfy to reopen his removal proceedings on the basis of lawyer error. The Board revisited these issues 15 years later in *Matter of Assaad*, 23 I. & N. Dec. 553 (BIA 2003), in response to a claim from the Immigration and Naturalization Service ("INS") that Supreme Court precedent in criminal and habeas cases undermined the notion of a constitutional right to effective assistance of counsel in removal proceedings. The Board acknowledged "some ambiguity in the basis set forth in [*Lozada*] for [aliens] to assert ineffective assistance claims," but declined to overrule its prior decision. *Id*. at 558. Among the reasons cited by the Board, one loomed large: "[S]ince *Matter of Lozada* was decided 15 years ago, the circuit courts have consistently continued to recognize that . . . [an alien] has a Fifth Amendment due process right to a fair immigration hearing and may be denied that right if counsel prevents the respondent from meaningfully presenting his or her case." *Id*. (citing cases).

Five years later, that condition no longer holds, as several courts of appeals, relying on the same Supreme Court precedent that the INS had cited in *Assaad*, have rejected the proposition that there is a constitutional right to the effective assistance of counsel in removal proceedings. *See, e.g.*, *Rafiyev v. Mukasey*, 536 F.3d 853, 861 (8th Cir. 2008); *Afanwi v. Mukasey*, 526 F.3d 788, 798–99 (4th Cir. 2008); *Magala v. Gonzales*, 434 F.3d 523, 525 (7th Cir. 2005); *see also Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006) (suggesting the same in dictum); *Stroe v. INS*, 256 F.3d 498, 500–01 (7th Cir. 2001) (same and noting that the "question whether there is ever a constitutional right to [effective assistance of] counsel in immigration cases is ripe for reconsideration"). In addition, the courts of appeals that continue to recognize the constitutional right have diverged with respect to the standards and requirements for a successful ineffective assistance claim. Some courts, for example, have applied a strict standard of prejudice while others have not; some have treated the *Lozada* factors as mandatory while others have not.

Because of the circuit splits on these important issues, and the resulting patchwork of rules governing motions to reopen removal proceedings in different parts of the country, I ordered the Board to refer these matters to me so that I could review the Board's position on both the constitutional question and the question of how best to resolve an alien's claim that his removal proceeding was prejudiced by his lawyer's errors. *See* Att'y Gen. Order Nos. 2990-2008, 2991-2008, & 2992-2008 (Aug. 7, 2008); *see also* 8 C.F.R. § 1003.1(h)(1)(i) (2008); *cf. Matter of R-A-*, 24 I. & N. Dec. 629, 631 (Att'y Gen. 2008) (stressing the importance of a "consistent, authoritative, nationwide interpretation of ambiguous provisions of the immigration laws"). To aid my review, I invited the parties and any interested amici curiae to submit briefs addressing the constitutional question. I invited them to address also whether, if there is no constitutional right to effective assistance of counsel, an alien nevertheless should be permitted, as a matter of administrative discretion, to reopen removal proceedings based on his lawyer's deficient performance.[1]

---

[1] My orders of August 7, 2008, called for submission of all briefs by September 15, 2008, and stated that "requests for extensions will be disfavored." Following requests from a few parties and amici, however, I extended the briefing deadline for all briefs by three weeks, until October 6, 2008. *See* Att'y Gen. Order No. 2998-2008 (Sept. 8, 2008). Thus, in

I conclude, as have a growing number of federal courts, that the Constitution does not confer a constitutional right to effective assistance of counsel in removal proceedings. The reason is simple: Under Supreme Court precedent, there is no constitutional right to effective assistance of counsel under the Due Process Clause or any other provision where—as here and as in most civil proceedings—there is no constitutional right to counsel, including government-appointed counsel, in the first place. Therefore, although the Fifth Amendment's Due Process Clause applies in removal proceedings, as it does in any civil lawsuit or in any administrative proceeding, that Clause does not entitle an alien to effective assistance of counsel, much less the specific remedy of a second bite at the apple based on the mistakes of his own lawyer.

However, the foregoing conclusion does not foreclose a remedy for aliens prejudiced by their lawyers' errors, because the Department of Justice is not limited to the very least that the Constitution demands. Although the Constitution does not entitle an alien to relief for his lawyer's mistakes, I conclude that the Department may, in its discretion, allow an alien to reopen removal proceedings based on the deficient performance of his lawyer. Balancing the strong public interest in the fairness and accuracy of removal proceedings with the strong public interest in the finality of completed proceedings, I establish in this opinion an administrative framework for the exercise of that discretion. In extraordinary cases, where a lawyer's deficient performance likely changed the outcome of an alien's removal proceedings, the Board may reopen those proceedings notwithstanding the absence of a constitutional right to such relief. Applying this administrative framework to the three cases before me, I affirm the Board's orders.

## I.

I begin with a brief summary of the certified matters. In *Matter of Compean*, respondent, a native and citizen of Mexico, unlawfully entered the

---

total, the parties and amici had one day shy of two full months to prepare their submissions, which is more time than that usually granted for briefing matters before the Board. *See* Board of Immigration Appeals Practice Manual ch. 4.7(a) & (c), at 65–67 (rev. ed. July 30, 2004). I received more than a dozen amicus briefs from interested organizations and individuals.

United States in 1989. In 2004, he was placed in removal proceedings and sought cancellation of removal. The Immigration Judge denied respondent's request on the ground that he had failed to establish the "exceptional and extremely unusual hardship" required by section 240A(b)(1)(D) of the Act, 8 U.S.C. § 1229b(b)(1)(D) (2006), and ordered him removed from the United States. After the Board affirmed on the merits, respondent filed a motion to reopen on the grounds of ineffective assistance of counsel. Respondent's self-described "most important" claim was that his former lawyer had failed to present evidence of a pending Form I-130 visa petition, although in point of fact that form had been part of the record before the Immigration Judge. In May 2008, the Board denied the motion on two grounds. First, the Board found that respondent had not filed a complaint with disciplinary authorities regarding his lawyer's deficient representation or explained his failure to do so, as required by *Lozada*. Second, noting that respondent had not produced any evidence that his lawyer's conduct precluded him from presenting before the Immigration Judge, the Board concluded that respondent had failed to establish that he had suffered prejudice from his lawyer's actions.

In *Matter of Bangaly*, respondent, a native and citizen of Mali, entered the United States in 1998 on a non-immigrant visa, which he unlawfully overstayed. He was placed in removal proceedings in 2003. Respondent subsequently obtained several continuances because he had filed for adjustment of status based upon his 2002 marriage to a United States citizen. In 2004, the Department of Homeland Security denied respondent's request for adjustment of status because his wife had failed three times to appear for an interview. The Immigration Judge denied respondent's request for a further continuance so that he could seek reopening of his adjustment of status petition and ordered him removed. Respondent's lawyer filed a notice of appeal, which stated that respondent would challenge the denial of the additional continuance. Respondent's lawyer never filed an appellate brief, however, and in 2005 the Board summarily affirmed the Immigration Judge's order. Approximately 2 years later, respondent moved to reopen his removal proceedings. Respondent alleged that his former counsel's failure to file an appellate brief and to notify him that his appeal had been summarily denied constituted ineffective assistance of counsel but did not explain how he had been prejudiced by these failures. In March 2008, the Board denied respondent's motion because he had failed to comply with

one of *Lozada*'s requirements: He had not given his former counsel a chance to respond to his allegations of ineffective representation.

Finally, in *Matter of J-E-C-*, the lead respondent, a native and citizen of Colombia, was admitted to the United States in 2000 on a six-month visa. His wife and children, also respondents, were admitted in 2001, on six-month visas as well. Lead respondent then sought asylum, withholding of removal, and protection under the Convention Against Torture on his own behalf and derivatively for his wife and children. In 2003, the Department of Homeland Security found respondents ineligible for relief and began removal proceedings. In those proceedings, lead respondent conceded removability, but renewed his application for asylum and withholding of removal. The Immigration Judge denied relief, concluding that, among other things, lead respondent had failed to demonstrate persecution "on account of" a protected ground, and ordered respondents removed. Respondents' lawyer filed a notice of appeal with the Board alleging four points of error, but the Board never received a brief in support of the appeal. Notwithstanding the absence of a brief, the Board addressed the four points of error on the merits, and affirmed what it called the "thorough and well-reasoned decision" of the Immigration Judge. Thereafter, respondents moved to reopen, contending that counsel's failure to file a brief constituted ineffective assistance and submitting a copy of the brief they would have submitted. In April 2008, the Board denied respondents' motion. Noting its previous decision addressing the merits of the claims, and reviewing those claims again, the Board concluded that respondents had suffered no prejudice from the failure to file a brief because a brief would not have changed the outcome of their proceedings.

## II.

Several uncontroversial propositions inform whether there is a constitutional right to effective assistance of counsel in removal proceedings. A removal proceeding is a civil action, not a criminal proceeding. *See, e.g.*, *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952) ("Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal proce-

dure.").[2] Therefore, the Sixth Amendment's guarantee that, in all "criminal prosecutions," an "accused shall . . . have the Assistance of counsel for his defence" does not apply. *See, e.g.*, *Abel v. United States*, 362 U.S. 217, 237 (1960) ("[D]eportation proceedings are not subject to the constitutional safeguards for criminal prosecutions."). Accordingly, the federal courts uniformly have held that the Sixth Amendment right to counsel (which includes the right to government-appointed counsel) does not apply in removal proceedings. *See, e.g.*, *Tang v. Ashcroft*, 354 F.3d 1192, 1196 (10th Cir. 2003); *United States v. Loaisiga*, 104 F.3d 484, 485 (1st Cir. 1997); *Delgado-Corea v. INS*, 804 F.2d 261, 262 (4th Cir. 1986); *United States v. Cerda-Pena*, 799 F.2d 1374, 1376 n.2 (9th Cir. 1986). The corresponding Sixth Amendment right to effective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 685–86 (1984), does not apply either. *See, e.g.*, *Afanwi*, 526 F.3d at 796 & n.31 (citing cases).

Unlike the Sixth Amendment, the Due Process Clause of the Fifth Amendment, which provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law," applies to civil and criminal proceedings alike. Moreover, that Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Therefore, it is well established that the Fifth Amendment entitles all aliens who have entered the United States to due process of law in removal proceedings. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

The Fifth Amendment's due process guarantee, however, applies only against the government. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (stating that the Due Process Clause applies only to "*governmental decisions* which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment" (emphasis added)). Thus, the actions of a private party,

---

[2] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C, 110 Stat. 3009-546 (enacted Sept. 30, 1996), established a new type of proceeding known as a "removal" proceeding to replace "deportation" proceedings.

including a privately retained lawyer, can give rise to a due process claim only if those actions can be attributed to the government for constitutional purposes. *See, e.g.*, *S.F. Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 542–43 (1987) (stating that where a plaintiff alleges a violation of the Fifth Amendment, "[t]he fundamental inquiry is whether the [defendant] is a governmental actor to whom the prohibitions of the Constitution apply"); *cf. Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (stating that the Due Process Clause of the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful"). The question presented in these cases, therefore, is whether the conduct of a privately retained lawyer can be attributed to the government for Due Process Clause purposes such that a litigant's general right to due process with respect to state action would include a specific right to effective representation by that private lawyer.

In the usual civil case, the answer to this question is a resounding no.[3] It is well established that, as a general matter, there is no constitutional right to counsel, and thus no constitutional right to effective assistance of coun-

---

[3] The Supreme Court has recognized a due process right to government-appointed counsel (and thus a constitutional right to effective assistance of counsel) in certain civil proceedings that pose the same ultimate threat to a defendant's physical liberty as a criminal trial that may result in incarceration. *See Vitek v. Jones*, 445 U.S. 480, 496–97 (1980) (plurality opinion) (holding that an individual has a constitutional right to appointed counsel in a civil proceeding the outcome of which may result in physical confinement at a psychiatric institution); *In re Gault*, 387 U.S. 1, 36–41 (1967) (holding that a juvenile has a constitutional due process right to appointed counsel in a delinquency proceeding where he faces commitment to a juvenile-detention facility). But these cases involved the right to government-appointed counsel, and the Supreme Court has largely limited these holdings to their particular contexts. *See, e.g.*, *Stroe*, 256 F.3d at 500 (noting that *Murray v. Giarratano*, 492 U.S. 1 (1989), and *Pennsylvania v. Finley*, 481 U.S. 551 (1987), "seem . . . to have cut back on earlier cases according a Fifth Amendment right to counsel when physical liberty is at stake in a noncriminal proceeding") (citing *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 31–32 (1981), and *In re Gault*, 387 U.S. at 36). And, in any event, the "preeminent generalization that emerges" from these cases is that the right to government-appointed counsel "has been recognized to exist *only* where the litigant may lose his physical liberty if he loses the litigation." *Lassiter*, 452 U.S. at 25 (emphasis added). Although an alien may be detained during the course of a removal proceeding, he does not "lose his physical liberty" based on the outcome of the proceeding. That is, the point of the proceeding is not to determine or provide the basis for incarceration or an equivalent deprivation of physical liberty, but rather to determine whether the alien is entitled to live freely in the United States or must be released elsewhere.

sel, in civil cases. *See, e.g.*, *MacCuish v. United States*, 844 F.2d 733, 735 (10th Cir. 1988) (citing cases). Instead, the rule is that counsel's errors are imputed to the client who chose his counsel, and that the client's sole remedy is a suit for malpractice against counsel and not a litigation do-over. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 397 (1993); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990); *Link v. Wabash R.R.*, 370 U.S. 626, 634 n.10 (1962); *Magala*, 434 F.3d at 525. That is true even when the case is complex or the stakes are especially high. Indeed, "[t]he non-right to effective assistance of counsel in civil cases is the rule even when the proceeding though nominally civil involves liberty or even life, as in a capital habeas corpus case, where the Supreme Court has held that there is no right to effective assistance of counsel." *Stroe*, 256 F.3d at 500 (citing *Murray v. Giarratano*, 492 U.S. 1 (1989), and *Pennsylvania v. Finley*, 481 U.S. 551 (1987)).

Despite the foregoing uncontroversial principles, several courts of appeals have suggested or held that the Due Process Clause creates a right to effective assistance of counsel in removal proceedings. *See, e.g.*, *Nehad v. Mukasey*, 535 F.3d 962, 967 (9th Cir. 2008); *Aris v. Mukasey*, 517 F.3d 595, 600–01 (2d Cir. 2008); *Zeru v. Gonzales*, 503 F.3d 59, 72 (1st Cir. 2007); *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007); *Sene v. Gonzales*, 453 F.3d 383, 386 (6th Cir. 2006); *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005); *Tang*, 354 F.3d at 1196; *see also Nelson v. Boeing Co.*, 446 F.3d 1118, 1120 (10th Cir. 2006) ("[T]he only context in which courts have recognized a constitutional right to effective assistance of counsel in civil litigation is in immigration cases."). [4] As

---

[4] It is important to note that many of these courts have limited the right to effective assistance of counsel to proceedings in which an alien seeks non-discretionary relief, thus precluding constitutional ineffective assistance of counsel claims in proceedings seeking purely discretionary relief such as waiver or cancellation of removal, asylum, adjustment of status, or voluntary departure. *See, e.g.*, *Garcia v. Att'y Gen.*, 329 F.3d 1217, 1223–24 (11th Cir. 2003); *Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001); *Mejia-Rodriguez v. Reno*, 178 F.3d 1139, 1148 (11th Cir. 1999); *see also Gutierrez-Morales v. Homan*, 461 F.3d 605, 609–10 (5th Cir. 2006); *Guerra-Soto v. Ashcroft*, 397 F.3d 637, 640–41 (8th Cir. 2005); *United States v. Torres*, 383 F.3d 92, 104-05 (3d Cir. 2004). *But see, e.g.*, *Fernandez v. Gonzales*, 439 F.3d 592, 602 & n.8 (9th Cir. 2006); *Rabiu v. INS*, 41 F.3d 879, 882–83 (2d Cir. 1994). These limitations flow from Supreme Court precedent holding that the constitutional guarantee of procedural due process applies to government proceedings only where a constitutionally protected interest in life, liberty, or property is at

noted, the Board has accepted these decisions as well. *See Assaad*, 23 I. & N. Dec. at 560; *Lozada*, 19 I. & N. Dec. at 638.

In doing so, however, the Board did not consider several critical points. For one thing, the cases the Board has accepted as supporting a potential Fifth Amendment right to effective assistance of counsel in removal proceedings rest on a weak foundation. As several courts now recognize, the cases acknowledging a constitutional right to effective assistance of counsel in removal proceedings trace back to a pair of 1975 decisions by the United States Court of Appeals for the Fifth Circuit, *Barthold v. INS*, 517 F.2d 689 (5th Cir. 1975), and *Paul v. INS*, 521 F.2d 194 (5th Cir. 1975), neither of which actually held that such a right exists. *See Afanwi*, 526 F.3d at 797. In fact, the Fifth Circuit explicitly stated in those cases that the "existence, let alone the nature and scope, of such a right has not been established," and merely suggested in dictum that "any right an alien may have in this regard is grounded in the fifth amendment guarantee of due process rather than the sixth amendment right to counsel." *Barthold*, 517 F.2d at 690 (emphasis added); *see also Paul*, 521 F.2d at 197 (following *Barthold*).[5]

More important, the constitutional analysis in the cases that recognize a Fifth Amendment right to effective assistance of counsel in removal proceedings is, in the words of the Seventh Circuit "distinctly perfunctory," *Stroe*, 256 F.3d at 500; *see also Assaad*, 23 I. & N. Dec. at 558 ("We . . . acknowledge some ambiguity in the basis set forth in [*Lozada*] for [aliens] to assert ineffective assistance claims."), and fails to establish that lawyers privately retained to represent aliens in removal proceedings are state actors for purposes of the Due Process Clause. This is a fatal flaw because, as noted, it is indisputable that the Fifth Amendment applies only against

---

stake in those proceedings, *see, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005), and that such interests are not implicated where proceedings involve only the pursuit of purely discretionary administrative relief, *see, e.g.*, *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464–67 (1981); *Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 7–10 (1979).

[5] 5 In *Assaad*, the Board emphasized that the Fifth Circuit had "joined the other circuits that have found a basis in the Fifth Amendment for ineffective assistance of counsel claims." 23 I. & N. Dec. at 558 (citing *Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 n.2 (5th Cir. 2001)). But the Fifth Circuit itself has stated that it "has repeatedly assumed without deciding that an alien's claim of ineffective assistance may implicate due process concerns under the Fifth Amendment." *Mai*, 473 F.3d at 165 (emphasis added).

the government. *See, e.g.*, *S.F. Arts & Athletics*, 483 U.S. at 542–43; *Mathews*, 424 U.S. at 332. And as the Eighth Circuit recently observed, it is "difficult to see how an individual, such as an alien's attorney, who is not a state actor, can deprive anyone of due process rights." *Rafiyev*, 536 F.3d at 860–61.

For private action to trigger scrutiny under the Due Process Clause, there must be a "sufficiently close nexus" between the federal government and the conduct of the private party "so that the action of the latter may be fairly treated as that of" the government itself. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982) (stating that "constitutional standards" may be invoked to challenge private action "only when it can be said that the [government] is responsible for the specific conduct of which the plaintiff complains"); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (emphasizing that the Due Process Clause applies to a private actor only if he may "fairly be said to be a state actor"). That may be the case where the private actor "has exercised powers that are traditionally the exclusive prerogative of the [government]," or where the government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Blum*, 457 U.S. at 1004–05 (internal quotation marks omitted). But "[t]he mere fact that a [private party] is subject to state regulation does not by itself convert its action into that of the [government]" for purposes of the Due Process Clause. *Id*. at 1004 (internal quotation marks omitted). And "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient" either. *Id*. at 1004–05.

Applying these standards here, I agree with the courts that have concluded that the government is not responsible for the conduct of a privately retained lawyer in removal proceedings. *See Rafiyev*, 536 F.3d at 861; *Afanwi*, 526 F.3d at 798–99; *Magala*, 434 F.3d at 525. A private lawyer plainly does not exercise "powers that are traditionally the exclusive prerogative" of the government because the lawyer is an adversary of the government. *Cf. Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 304 (2001) ("The state-action doctrine does not convert opponents into virtual agents."); *Polk County v. Dodson*, 454 U.S. 312, 317–24 (1981) (holding that adversaries of the state are not state actors for purposes of 42 U.S.C. § 1983). Nor, in the ordinary case, can it be said

that a private lawyer's deficient performance in representing an alien in removal proceedings is the product either of government "coerci[on]" or "encouragement." *Blum*, 457 U.S. at 1004–05; *see, e.g.*, *Afanwi*, 526 F.3d at 799 ("Afanwi's counsel was privately retained pursuant to 8 U.S.C. § 1362, and his alleged ineffectiveness . . . was a purely private act. The federal government was under no obligation to provide Afanwi with legal representation, and there was no connection between the federal government and counsel's failure.") (footnote omitted).

It is true that, as respondents and their amici assert, the federal government has taken affirmative steps to notify aliens of the availability of counsel, *see, e.g.*, 8 C.F.R. § 1240.10(a)(1)–(3) (2008), and to regulate the private immigration bar, *see, e.g.*, *id*. §§ 1003.101(a)(1)–(4), 1003.102(k), 1292.1(a)(1)–(6), 1292.2(a), (c), (d), 1292.3(a). But as noted, the "mere fact that a [private party] is subject to state regulation does not by itself convert its action into that of the [government]" for purposes of the Due Process Clause. *Blum*, 457 U.S. at 1004 (internal quotation marks omitted). Moreover, for the constitutional standards to apply, the government must be responsible for "the specific conduct of which the plaintiff complains." *Id*. (emphasis added). It cannot accurately be said that the government's steps to encourage competent representation and to improve the quality of counsel as a general matter are "responsible" for a specific lawyer's incompetent performance. *Cf. Lawrence v. Florida*, 547 U.S. 327, 337 (2007) ("[A] State's effort to assist prisoners in postconviction proceedings does not make the State accountable for a prisoner's delay."). The relevant regulatory provisions do not condone poor representation, much less constitute "significant encouragement" of, *Blum*, 457 U.S. at 1004, or "willful participa[tion] in," *Lugar*, 457 U.S. at 941 (internal quotation marks omitted), incompetent performance. These basic and well-established principles, which the Board did not consider in either *Lozada* or *Assaad*, have moved several courts to hold that private lawyers in immigration proceedings are not state actors for due process purposes. *See Rafiyev*, 536 F.3d at 861; *Afanwi*, 526 F.3d at 798–99; *Magala*, 434 F.3d at 525.

In arguing that a private lawyer's representation of an alien in a removal proceeding may nonetheless constitute state action, respondents and their amici rely heavily on the Supreme Court's decision in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). *See, e.g.*, Brief for American Immigration Law Foundation as Amicus Curiae at 11–12, 15, 17; Brief for Joseph Afanwi as

Amicus Curiae at 3, 6, 10, 12. But that reliance is misplaced. In *Cuyler*, the Court held that a criminal defendant may challenge the effectiveness of his trial lawyer even if that lawyer was privately retained. *See* 446 U.S. at 342–45. A reading of the Court's decision, however, makes plain that its holding was merely an application of the underlying Sixth Amendment right to counsel in criminal cases (and the equal justice principles that make that right applicable to the actions of both government-appointed and privately retained lawyers). As the Court explained:

> Our decisions make clear that inadequate assistance does not satisfy the Sixth Amendment right to counsel . . . . [T]he Sixth Amendment does more than require the States to appoint counsel for indigent defendants. The [Sixth Amendment] right to counsel prevents the States from conducting trials at which persons who face incarceration must defend themselves without adequate legal assistance.
>
> A proper respect for the Sixth Amendment disarms [the] contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. . . . The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection.

*Id.* at 344 (emphasis added). As the repeated references in this passage to the Sixth Amendment make clear, the Court's ruling was grounded in the Sixth Amendment and its explicit guarantee of a right to counsel, including government-appointed counsel, which are inapplicable here. That is, the Court recognized a constitutional right to effective assistance of counsel by privately retained lawyers in criminal proceedings because: (1) the Constitution itself, through the Sixth Amendment, guarantees a right to counsel in such proceedings (whether the defendant is "indigent" or able to hire lawyers); (2) to be meaningful, this right must refer to "adequate" (or effective) assistance of counsel; and (3) in light of principles of equal justice, the right must apply to all criminal defendants, whether they hire private lawyers with their own funds or have a government-appointed lawyer. Thus, where, as here, there is no constitutional right to counsel that includes the right to government-appointed counsel, the holding in *Cuyler* does not apply. *See, e.g.*, *Stroe*, 256 F.3d at 501 ("In criminal cases . . . the Sixth Amendment is interpreted to impute even a retained lawyer's goof-

ups to the state, *Cuyler v. Sullivan*, 446 U.S. 335, 342–45 (1980)—but then the Sixth Amendment creates a right to counsel, whereas all that the due process clause requires, so far as procedure is concerned, is notice and an opportunity for a hearing.").

Were there any doubt on this score, it is resolved by the Supreme Court's decisions in *Wainright v. Torna*, 455 U.S. 586 (1982) (per curiam), and *Coleman v. Thompson*, 501 U.S. 722 (1991). In *Wainright*, the Court considered whether the respondent, a criminal defendant, could challenge his lawyer's failure to file timely a discretionary appeal to the state supreme court. Noting that "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals," 455 U.S. at 587 (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)), the Court quickly disposed of the respondent's claim. "Since respondent had no constitutional right to counsel," the Court explained, "he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." *Id*. at 587–88. In reaching this conclusion, the Court explicitly addressed the due process and state action issues relevant here, explaining that the respondent "was not denied due process of law by the fact that counsel deprived him of his right to petition" the state supreme court for review because "[s]uch deprivation . . . was caused by his counsel, and not by the State." *Id*. at 588 n.4.

The Court applied the same analysis in *Coleman*. In that case, the petitioner, a criminal defendant, had been convicted and sentenced to death. On state habeas review, he raised various federal constitutional claims, but the state supreme court refused to address them because his lawyer had filed an untimely notice of appeal. Normally, such "procedural default" would bar review of the claims on federal habeas review, but the petitioner argued that his lawyer's error should excuse the default. As in *Wainright*, the Court rejected this argument swiftly: "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See Wainright v. Torna*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance)." *Coleman*, 501 U.S. at 752 (some citations omitted). The Court further explained that because the petitioner's lawyer was "the petitioner's agent when acting, or failing to act, in furtherance of the litigation, . . . the petitioner must 'bear the risk of attorney error.'" *Id*. at 753 (quoting *Mur-*

*ray v. Carrier*, 477 U.S. 478, 488 (1986); and citing *Link*, 370 U.S. at 634, and *Irwin*, 498 U.S. at 92).

The Court acknowledged that a different rule applied where, as in *Cuyler*, a lawyer's conduct had deprived his client of the Sixth Amendment's right to counsel. The Court explained, however, that "[t]his is not because . . . the error is so bad that 'the lawyer ceases to be an agent of the petitioner.'" *Coleman*, 501 U.S. at 754 (quoting petitioner's brief). Rather, "if the procedural default is the result of [constitutional] ineffective assistance of counsel, *the Sixth Amendment itself* requires that responsibility for the default be imputed to the State." *Id*. (internal quotation marks omitted) (emphasis added). "In other words," wrote the Court, "it is not the gravity of the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor, i.e., 'imputed to the State.'" *Id*. Where a criminal defendant has been deprived of his Sixth Amendment right to effective assistance of counsel, the Court continued, "the State, which is responsible for the denial as a constitutional matter, must bear the cost. . . . A different allocation of costs is appropriate in those circumstances where the State has no responsibility to ensure that the petitioner was represented by competent counsel." *Id*.; *cf. Lawrence*, 549 U.S. at 337 (holding that a lawyer's filing errors do not entitle a party to equitable tolling in a "context where [the party] ha[s] no constitutional right to counsel").

Respondents and their amici attempt to distinguish *Wainwright* and *Coleman* on the grounds that those cases implicated federalism concerns that are not present here and involved discretionary state appeals rather than first appeals as of right. *See, e.g.*, Brief for American Immigration Law Foundation as Amicus Curiae at 16–18; Brief for Joseph Afanwi as Amicus Curiae at 11–12. But to the extent relevant here, nothing in the Court's decisions turned on these considerations. (Indeed, *Wainwright* did not even discuss federalism.) *See Assaad*, 23 I. & N. Dec. at 565–66 (Scialabba, Chairman, and Filppu, Board Member, concurring). Respondents and their amici also contend that *Wainwright* and *Coleman* should not guide the constitutional inquiry here because they concerned criminal, rather than immigration, matters. *See, e.g.*, Brief for Respondent J-E-C- at 9–11; Brief for American Immigration Law Foundation as Amicus Curiae at 19–20; Brief for Joseph Afanwi as Amicus Curiae at 11–12; *see also Assaad*, 23 I. & N. Dec. at 560 (majority opinion) (stating, in adhering to

*Lozada*, that *Wainwright* and *Coleman* "arose in the context of criminal, rather than immigration, proceedings" and thus did not control over circuit precedent issued in the immigration context). But *Coleman* involved state habeas review, which—like a removal proceeding—is civil in nature. Moreover, if anything, that *Wainwright* and *Coleman* related to criminal cases actually cuts against the arguments presented by respondents and their amici because criminal defendants enjoy an express constitutional right to assistance of counsel, including government-appointed counsel, while aliens in removal proceedings do not.

In the final analysis, respondents' and their amici's arguments boil down to an assertion that, notwithstanding all of the foregoing Supreme Court precedent and settled constitutional law, an alien's general due process right to a full and fair hearing on the merits of his immigration claims must include a specific right to effective assistance of counsel because without such a specific right removal proceedings would be fundamentally unfair. In particular, respondents and their amici contend that because the stakes in removal proceedings are so high, the immigration laws are so complex, and aliens are so often ill equipped—due to cultural, educational, financial, or language barriers—successfully to handle them alone, due process requires the guiding hand of competent counsel. *See, e.g.*, Brief for the Immigration Law Clinic at the University of Detroit Mercy School of Law as Amicus Curiae at 2–4; Brief for Respondent Bangaly at 9–10 (arguing for a fundamentally fair proceeding); Brief for Respondent J-E-C- at 12 (same); *see also, e.g.*, *Hernandez v. Mukasey*, 524 F.3d 1014, 1017–18 (9th Cir. 2008); *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806–07 (9th Cir. 2007). This argument is insufficient to override the relevant constitutional holdings of *Wainwright* and *Coleman*, which had nothing to do with the complexity of the issues involved or the wealth and sophistication of the litigants. Nor can the arguments convert otherwise private actors into state actors, which, as discussed, is the prerequisite for a Due Process Clause claim.

Moreover, respondents' and their amici's argument regarding the special nature of removal proceedings ignores key implications of the constitutional right they assert. If respondents and their amici are correct that a Fifth Amendment right to effective assistance of counsel flows from a litigant's relative disadvantage in certain civil proceedings, the Constitution would arguably require not just effective assistance by privately retained lawyers in removal proceedings, but also assistance of counsel—including govern-

ment-appointed counsel—in removal proceedings. Yet no court has ever held that such a right exists in removal proceedings. Nor has any court ever suggested that where an alien represents himself in his removal proceedings (as often happens), he has a constitutional right to seek or obtain reopening of the proceedings on the ground that his own performance was incompetent. This fact is revealing, because as the Supreme Court has explained in the Sixth Amendment context, there are serious equal protection concerns with construing the Constitution to confer greater rights on an alien who chose to avail himself of the privilege to retain counsel than on an alien who did not do so or who could not do so because he was indigent. *See Cuyler*, 446 U.S. at 344.

In addition, if correct, respondents' and their amici's Fifth Amendment argument would apply with equal, if not greater, force to many other forms of civil proceedings. Yet courts have repeatedly and expressly held that there is no constitutional right to effective assistance of counsel in other civil contexts where the stakes are as high (or higher) than in removal proceedings and where litigants suffer from the same alleged disadvantages as aliens. As Judge Easterbrook explained in a recent Seventh Circuit opinion, "The Constitution entitles aliens to due process of law, but this does not imply a right to good lawyering. Every litigant in every suit and every administrative proceeding is entitled to due process, but it has long been understood that lawyers' mistakes are imputed to their clients." *Magala*, 434 F.3d at 525 (citing cases); *see also Stroe*, 256 F.3d at 500.

In sum, and as a number of courts have now recognized, there is no valid basis for finding a constitutional right to counsel in removal proceedings, and thus no valid basis for recognizing a constitutional right to effective assistance of privately retained lawyers in such proceedings. The Sixth Amendment right to effective assistance of counsel in criminal cases does not apply because removal proceedings are civil. And the Fifth Amendment does not confer an equivalent right because the Due Process Clause applies only against the government, aliens have no constitutional right to government-appointed lawyers in removal proceedings, and there is no other ground for treating private lawyers as state actors. Accordingly, the government is not "responsible" for the denial of effective representation in removal proceedings "as a constitutional matter." *Coleman*, 501 U.S. at 754; *see also, e.g.*, *Rafiyev*, 536 F.3d at 860–61 (concluding that because "[c]onstitutional rights are rights against the government" and it is "diffi-

cult to see how an individual, such as an alien's attorney, who is not a state actor, can deprive anyone of due process rights," there "is no constitutional right under the Fifth Amendment to effective assistance of counsel in a removal proceeding").

The fact that aliens in removal proceedings have a statutory privilege to retain counsel of their choosing at no expense to the government, *see* INA §§ 240(b)(4) & 292, 8 U.S.C. §§ 1229a(b)(4) & 1362, does not change the constitutional analysis, because a statutory privilege is not the same as a right to assistance of counsel, including government-appointed counsel, under the Constitution. *See Finley*, 481 U.S. at 556 ("[T]he fact that the defendant has been afforded assistance of counsel [under state law] does not end the inquiry for Federal constitutional purposes. Rather, it is the source of that right to a lawyer's assistance, combined with the nature of the proceedings, that controls the constitutional question. In this case, respondent's access to a lawyer is the result of the State's decision, not the command of the United States Constitution."). Under *Finley*, *Wainwright* and *Coleman*, it is the presence or absence of a constitutional (as opposed to statutory or other) right to counsel, including government-appointed counsel, that controls whether there is a constitutional right to effective assistance of counsel. *See Rafiyev*, 536 F.3d at 861 ("Removal proceedings are civil; there is no constitutional right to an attorney, so an alien cannot claim constitutionally ineffective assistance of counsel.") (citing *Wainwright*, *Coleman* and other cases). Because the Constitution does not confer a right to counsel (including government-appointed counsel) in removal proceedings, I conclude, as have a growing number of federal courts of appeals, that there is no constitutional right to effective assistance of counsel in such proceedings. To the extent they are inconsistent with this conclusion, *Lozada* and *Assaad* (and any other Board precedent decisions on point) are overruled.

## III.

Having concluded that there is no constitutional right to effective assistance of counsel in removal proceedings, I consider whether a non-constitutional source of law—either the immigration statutes or departmental regulations—entitle an alien to reopen his removal proceedings based on his lawyer's deficient performance. They do not. The Act and

its implementing regulations merely permit an alien to hire "such counsel" as "he shall choose," INA § 292; *accord id*. § 240(b)(4)(A); 8 C.F.R. § 1003.16(b) (2008); they give an alien "no right to complain," much less reopen his proceedings, "if the lawyer he hires is ineffective." *Stroe*, 256 F.3d at 500; *see also Jezierski v. Mukasey*, 543 F.3d 886, 888 (7th Cir. 2008) ("No statute entitles the alien to effective assistance of counsel."); *cf. Father & Sons Lumber and Bldg. Supplies, Inc. v. NLRB*, 931 F.2d 1093, 1097 (6th Cir. 1991) (holding that the Administrative Procedure Act, 5 U.S.C. § 555(b) (1988), which provides that a "person compelled to appear in person before an agency . . . is entitled to be accompanied, represented, and advised by counsel," does not "confer a statutory right to effective assistance of counsel"). Accordingly, neither the Constitution nor any statutory or regulatory provision entitles an alien to a do-over if his initial removal proceeding is prejudiced by the mistakes of a privately retained lawyer.

That said, the Department of Justice is "not limited to the very least that the Constitution"—or the Act—"demands." *Magala*, 434 F.3d at 526. Although the law does not require the Department to provide an alien with the right to reopen his removal proceedings based on lawyer error, the law allows the Department to do so "as a matter of sound discretion." *Id*. The source for this authority is the Department's broad authority to reopen removal proceedings. *See* INA § 240(c)(7) (permitting a motion to reopen within 90 days of the date on which a final administrative order of removal is entered); *id*. § 240(b)(5)(C) (granting an alien 180 days to seek reopening in order to rescind a removal order entered in absentia; and providing no time limit where the alien did not receive notice of the immigration hearing or was in custody); 8 C.F.R. § 1003.2 (2008). The Act and its implementing regulations place a few limits on the Board's discretion in determining whether reopening is warranted, *see, e.g.*, INA § 240(c)(7)(B) (providing that a motion to reopen must state "the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material"); 8 C.F.R. § 1003.2(c) (2008) ("A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing[.]"), but the Board generally enjoys "broad discretion" in ruling on motions to reopen, and may deny reopening even where an alien has made

a prima facie showing of eligibility for relief. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *accord INS v. Abudu*, 485 U.S. 94, 105–06 (1988); *INS v. Rios-Pineda*, 471 U.S. 444, 449 (1985); *Matter of Coelho*, 20 I. & N. Dec. 464, 471–72 (1992); *cf. Matter of J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997) (stating that the authority to reopen proceedings sua sponte is limited to "exceptional" circumstances and "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship").[6]

Reopening removal proceedings on the basis of a lawyer's deficient performance is a permissible exercise of this broad discretion. It is also a proper exercise of that discretion in appropriate circumstances—namely, if certain prerequisites, explained below, are met—because the stakes in removal proceedings are sometimes high, the immigration laws can be complex, and many aliens would be better equipped to navigate them with counsel. *See, e.g.*, *Aris*, 517 F.3d at 600; *Hernandez-Gil*, 476 F.3d at 806–07. Moreover, and regrettably, "[t]he deficiencies of the immigration bar are well known." *Stroe*, 256 F.3d at 504; *see also, e.g.*, *Aris*, 517 F.3d at 596, 600–01 ("With disturbing frequency, this Court encounters evidence of ineffective representation by attorneys retained by immigrants seeking legal status in this country."). There is a strong public interest in ensuring that these deficiencies do not affirmatively undermine the fairness and accuracy of removal proceedings. *Cf. Final Rule: Professional Conduct for Practitioners—Rules and Procedures*, 65 Fed. Reg. 39,513, 39,514–15 (June 27, 2000) (recognizing that an effective disciplinary system protects the public, preserves the integrity of the immigration courts, and helps maintain high professional standards); *Final Rule: Professional Conduct for Practitioners—Rules and Procedures, and Representation and Appearances*, 73 Fed. Reg. 76,914, 76,915 (Dec. 18, 2008) (defining "additional categories of behavior that constitute misconduct" by attorneys and accredited representatives in order to "preserve the fairness and integrity of immigration proceedings, and increase the level of protection afforded to aliens in those proceedings"). That interest justifies allowing the Board

---

[6] Although this opinion discusses the Board's power to reopen, immigration judges also have the power to reopen removal proceedings based on a lawyer's deficient performance, *see* 8 C.F.R. § 1003.23 (2008), and shall be guided by the same standards and procedures set forth herein when adjudicating such a motion. Likewise, the framework in this opinion applies to claims of deficient performance raised before the Board on direct review.

to mitigate the consequences of a lawyer's deficient performance by allowing an alien to relitigate his removal in the extraordinary case where his lawyer's deficient performance likely changed the outcome of his initial removal proceedings.[7]

At the same time, it is important to recognize that there is a strong public interest in the expeditiousness and finality of removal proceedings, an interest that Congress has repeatedly emphasized through legislation imposing time limits and curbing discretionary relief. *See, e.g.*, *Liadov v. Mukasey*, 518 F.3d 1003, 1009–10 (8th Cir. 2008) ("Congress in recent years has taken repeated action to expedite removal proceedings and curb perceived abuses."). As the Supreme Court has observed, granting motions to reopen "too freely" would undermine this interest by "permit[ting] endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *Abudu*, 485 U.S. at 108 (internal quotation marks omitted); *see also Doherty*, 502 U.S. at 323 (stating that motions to reopen are "especially" disfavored "in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes

---

[7] The interest in ensuring that a lawyer's deficient performance does not undermine the fairness and accuracy of removal proceedings does not warrant, however, allowing a motion to reopen based on the conduct of non-lawyers (except where an alien is represented by an accredited representative pursuant to 8 C.F.R. § 1292.1(a)(4) or in the extraordinary case where an alien reasonably but erroneously believed that someone was a lawyer). The reason is that lawyers and accredited representatives are governed by rules of professional conduct and have skills, including but not limited to knowledge of immigration laws and procedures, that are directly related to furthering the interest that aliens and the government have in fair and accurate immigration proceedings. *See, e.g.*, *Hernandez*, 524 F.3d at 1018–19. The same cannot be said of non-lawyers, so-called "notarios" and other unaccredited immigration consultants. *See, e.g.*, *Mendoza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1077 n.4 (9th Cir. 2007) ("[T]he immigration system in this country is plagued with 'notarios' who prey on uneducated immigrants."); *see also* Executive Office for Immigration Review, U.S. Dep't of Justice, Notice, *"Notarios," Visa Consultants, and Immigration Consultants Are Not Attorneys* (Nov. 20, 2008), http://www.usdoj.gov/eoir/press/08/NotariosNoticeProtectionsCAFINAL112008.pdf. Accordingly, the deficient performance claim established in this opinion extends only to the conduct of a lawyer, an accredited representative, or a non-lawyer the alien reasonably but erroneously believed to be a lawyer and who was retained to represent the alien in the proceedings; it does not extend any further or to the conduct of an alien representing himself. *Cf. Hernandez*, 524 F.3d at 1018–19 (holding that an alien may not pursue an ineffective-assistance-of-counsel claim with respect to the conduct of a non-lawyer).

merely to remain in the United States"); *Betouche v. Ashcroft*, 357 F.3d 147, 150 (1st Cir. 2004) ("Since a delay in deportation may itself constitute a substantial boon to an alien already subject to a final deportation order, there exists a significant prospect that entirely meritless and/or collusive ineffective assistance claims may be filed for purely dilatory purposes."). This concern is especially strong when an alien seeks reopening on the basis of a lawyer's alleged deficient performance, because even a meritless motion can succeed in tying up the system and postponing an alien's removal for months or even years based on the difficulties inherent in assessing and adjudicating a lawyer's performance after the fact. Federal courts have observed that they are increasingly burdened by claims of lawyer error and have condemned "the numerous groundless and dilatory claims" of this sort that are "routinely submitted" to immigration judges and the Board. *Betouche*, 357 F.3d at 150.

The balancing of these competing considerations in addressing motions to reopen under the Act is committed to the discretion of the Attorney General. *See Abudu*, 485 U.S. at 108, 110. I exercise that discretion in this opinion by identifying the general criteria to be used by the Board and immigration judges in addressing motions to reopen based on claims of deficient performance by counsel. At the same time, the Board and immigration judges retain considerable discretion in addressing such motions. Whether an alien has made a sufficient showing to warrant relief based on counsel's allegedly deficient performance is, in each case, committed to the discretion of the Board or the immigration judge. And the Board and immigration judges retain discretion to deny relief in appropriate circumstances even if the prerequisites described below are satisfied, especially where the ultimate relief sought is discretionary.

## IV.

With these competing interests in mind, I turn to the general framework that the Board and immigration judges should apply henceforth when aliens seek to reopen removal proceedings based on a lawyer's deficient performance. To avoid confusion with what has heretofore been treated as a constitutional claim of ineffective assistance of counsel, I will refer to the

claim recognized in this opinion as a "deficient performance of counsel" claim.[8]

In establishing a framework for consideration of deficient performance claims, I do not write on a blank slate. As noted, 20 years ago, in *Lozada*, 19 I. & N. Dec. 637, the Board held (albeit based on erroneous constitutional underpinnings) that an alien may qualify for reopening of his removal proceedings based on lawyer error. To qualify for relief, the Board explained, an alien must establish that his lawyer's failings had been "egregious," and that he had been prejudiced by his lawyer's performance. *Id*. at 638–39. In addition, the Board established three requirements, the so-called *Lozada* factors, for reopening removal proceedings on grounds of lawyer error. First, the alien must submit an affidavit "attesting to the relevant facts," including "a statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken [in the litigation] and what counsel did or did not represent to the [alien] in this regard." *Id*. at 639. Second, "former counsel must be informed of the allegations and allowed the opportunity to respond," and that response, if any, must accompany the motion. *Id*. And third, "the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." *Id*.

The *Lozada* standards and requirements have largely stood the test of time, but 20 years of experience has also revealed ways in which they can and should be improved. The administrative framework established today supersedes that set forth in *Lozada*, but draws on its approach. Significantly, it is designed, as the framework in *Lozada* was, to enable the Board to resolve most deficient performance claims on the basis of the written record presented by the parties in connection with the motion without

---

[8] In the interest of national uniformity, the Board and immigration judges should apply the framework set forth below in toto, even in circuits that have previously held that there is a constitutional right to effective assistance of counsel. That will allow those circuits to reconsider the question (en banc if necessary) more efficiently and easily, without the weight of the Board's 1988 *Lozada* precedent, which predated the majority of the relevant judicial decisions. If, notwithstanding my decision today, a court of appeals subsequently reaffirms (or decides in the first instance) that there is a constitutional right to effective assistance of counsel in removal proceedings, and that court's decision has become final and unreviewable, the Board and immigration judges will need to determine what elements of the framework may be implemented in that circuit consistent with the court's decision.

having to remand to an immigration judge for fact-finding. *See Patel v. Gonzales*, 496 F.3d 829, 831–32 (7th Cir. 2007) (noting that the *Lozada* factors were designed to "reduce the potential for abuse by providing information from which the [Board] can assess whether an ineffective assistance claim has enough substance to warrant the time and resources necessary to resolve the claim on its merits"). Evidentiary hearings before an immigration judge cannot always be avoided, but "such hearings are an added burden on both the parties and the Immigration Court, and they rarely assist in resolving the merits of the substantive immigration law issues presented by a particular case." *Matter of Rivera*, 21 I. & N. Dec. 599, 604 (BIA 1996). Consequently, the framework established today is intended, as *Lozada* was, to permit the Board to resolve the great majority of claims expeditiously on the basis of an alien's motion to reopen and accompanying documents alone. *See id.* (noting that the Board "prefer[s] to make final determinations of ineffective assistance of counsel claims on the documentary submissions alone, where possible"); *see also Betouche*, 357 F.3d at 150 ("The immigration courts, which reasonably cannot be expected to conduct a full-fledged evidentiary hearing for all such claims, must be able to impose fair and efficacious techniques for screening out, *ab initio*, the numerous groundless and dilatory claims routinely submitted in these cases.").

## A.

To prevail on a deficient performance of counsel claim, an alien bears the burden of establishing three elements.

## 1.

First, the alien must show that his lawyer's failings were "egregious," a requirement the Board recognized in *Lozada*, 19 I. & N. Dec. at 639. In light of the strong public interest in finality and the rule that "litigants are generally bound by the conduct of their attorneys," *id.*, it is not enough merely to demonstrate that one's lawyer made an ordinary mistake or could have presented a more compelling case. Moreover, given the danger of second-guessing a lawyer's performance with "the distorting effects of hindsight," it is appropriate in making this assessment to apply a "strong presumption that counsel's conduct falls within the wide range of reasona-

ble professional assistance." *Strickland*, 466 U.S. at 689. Requiring that the error be "egregious," and viewing the matter from counsel's perspective at the time, will help ensure that reopening is reserved for those extraordinary cases that truly warrant relief, and that relief is not granted simply because an alien shows after the fact that he received less than flawless representation.

## 2.

Second, in cases where the alien moves to reopen beyond the applicable time limit—typically 90 days from the date the removal order was entered—the Board may exercise its discretion to allow tolling of the 90-day period, but only if the alien affirmatively shows that he exercised due diligence in discovering and seeking to cure his lawyer's alleged deficient performance. *Cf., e.g.*, *Barry v. Mukasey*, 524 F.3d 721, 724–25 (6th Cir. 2008) (holding that the reopening deadline may be equitably tolled in cases involving a lawyer's deficient performance, provided that the alien shows due diligence); *Zhao v. INS*, 452 F.3d 154, 157–58 (2d Cir. 2006) (same). "Due diligence requires an alien to prove that the delay in filing the motion to reopen was due to an exceptional circumstance beyond his control." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 (6th Cir. 2007) (quotation marks omitted). In deficient performance cases, this will typically require that the alien prove he made timely inquiries about his immigration status and the progress of his case. It will also typically require that the alien promptly file a motion to reopen within a reasonable period after discovering his lawyer's deficient performance.

There is no bright line for determining when a particular delay is too long. Instead, the Board should evaluate due diligence on a case-by-case basis, taking into account the circumstances of the case and the reasons offered for any delay. The Board should perform this evaluation by determining objectively when a reasonable person should have discovered the possibility that he had been victimized by the lawyer's deficient performance, and when a reasonable person would have taken steps to cure it following discovery. *See Iavorski v. INS*, 232 F.3d 124, 134 (2d Cir. 2000) (stating that the test is whether the lawyer's error was, "or should have been, discovered by a reasonable person in the situation"); *Patel v. Gonzales*, 442 F.3d 1011, 1016 (7th Cir. 2006) (asking "whether a reasonable

person in the plaintiff's position would have been aware of the possibility that he had suffered an injury") (internal quotation marks omitted). The determination of whether the facts and circumstances warrant tolling of the filing period is—like the decision on a motion to reopen based on counsel's allegedly deficient performance itself—committed in all instances to the discretion of the Board.

### 3.

Third, as the Board and courts of appeals uniformly have held, an alien must establish prejudice arising from the lawyer's errors. *See Lozada*, 19 I. & N. Dec. at 638; *cf. Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

The proper standard of prejudice to apply, however, is a crucial question on which even the courts of appeals that have recognized a constitutionally based claim of ineffective assistance have not spoken consistently. Some courts apply a strict standard. *See, e.g.*, *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006) (holding that an alien "must establish that, but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States"). Other courts apply a standard similar to the one the Supreme Court established in Strickland for Sixth Amendment ineffective-assistance-of-counsel claims, namely "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *See, e.g.*, *Fadiga*, 488 F.3d at 159. And one court—the Ninth Circuit—deems the prejudice requirement satisfied as long as the alien can show "plausible grounds for relief" on the underlying claim. *Mohammed v. Gonzales*, 400 F.3d 785, 794 (9th Cir. 2005).

I conclude that to establish prejudice arising from a lawyer's deficient performance sufficient to permit reopening, an alien must show that but for the deficient performance, it is more likely than not that the alien would have been entitled to the ultimate relief he was seeking. In doing so, I borrow from the standard commonly applied by the federal courts, in both civil and criminal proceedings, to motions for a new trial based on newly discovered evidence. *See, e.g.*, *Environmental Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 608 (7th Cir. 2008); *United States v. Johnson*, 519

F.3d 478, 487 (D.C. Cir. 2008). The Supreme Court itself has described such motions as "the appropriate analogy" to motions to reopen removal proceedings. *Abudu*, 485 U.S. at 110; *accord Doherty*, 502 U.S. at 323. And as the Court explained, "[t]he reasons why motions to reopen are disfavored in deportation proceedings are comparable to those that apply to . . . motions for new trials on the basis of newly discovered evidence. There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *Abudu*, 485 U.S. at 107 (footnote omitted).

In my judgment, the "more likely than not" standard is more appropriate than *Strickland*'s "reasonable probability" standard. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (recognizing that a "more likely than not" standard is more demanding than a "reasonable probability" standard). The *Strickland* standard, after all, was intended to vindicate a criminal defendant's constitutional right to effective assistance of counsel. Here, as discussed, there is no constitutional right to effective assistance of counsel, so the alien's interests relative to the public interest in finality are correspondingly weaker. It follows that the "more likely than not" standard is also more appropriate than the Ninth Circuit's "plausible grounds for relief" standard. Indeed, even *Strickland* rejected a comparable standard, explaining that "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." 466 U.S. at 693. In short, the "more likely than not" standard best reflects and protects the strong public interest in ensuring the finality of removal proceedings while still providing a safety valve for those cases in which an alien was demonstrably harmed by his lawyer's egregious performance.

As noted, this standard of prejudice requires the alien to establish the probability that, but for his lawyer's error, he would have been entitled to the ultimate relief he was seeking. In most cases, this will require a showing that, but for the lawyer's error, the alien likely would have been entitled to continue residing in the United States. Hence, an alien cannot prevail on a claim that, for example, his lawyer was wrong in failing to request a continuance simply by showing that he likely would have been granted a continuance. Instead, he must show that, but for the lawyer's failing, he likely would have succeeded on the merits of his underlying claim to re-

main in the United States. And in cases where discretionary relief is at issue, an alien must present evidence that not only establishes he was eligible for relief, but also that he believes would have led to a favorable exercise of discretion.

This is a common-sense requirement: If the alien would have been denied discretionary relief had the merits been adjudicated, there can have been no prejudice arising from an error that led to the agency's failure to reach the merits. Moreover, because an alien who seeks only discretionary relief is removable, and because the request to reopen is itself discretionary, the Board may properly insist upon a clear showing that discretionary relief would have been granted if the merits had been adjudicated. This also will enable the Board to address some claims of lawyer error more efficiently, because it "may leap ahead, as it were, over the . . . threshold concerns . . . and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *Abudu*, 485 U.S. at 105.[9]

## B.

To enable the Board to determine if these standards have been met, an alien who seeks reopening of removal proceedings based on his lawyer's deficient performance also must submit certain documents in support of his motion. In particular, he must submit a detailed affidavit setting forth the facts that form the basis of the deficient performance of counsel claim. The affidavit must explain with specificity what his lawyer did or did not do, and why he, the alien, was harmed as a result. As the First Circuit has explained, "the requirement of a sworn affidavit, presaging and memorializing the testimony which the alien petitioner would present were he to be accorded a hearing, produces the primary evidentiary basis upon which the [agency] evaluates the bona fides of the petitioner's claim in determining whether a hearing is even warranted." *Betouche*, 357 F.3d at 150. Moreover, "by exposing an alien to the potential pains of perjury, the affidavit requirement foster[s] an atmosphere of solemnity commensurate with the gravity of the . . . claim, and serves as a screening device whereby deporta-

---

[9] It bears mentioning that many of the federal courts that have recognized constitutional claims to ineffective assistance of counsel in removal proceedings have not even permitted such claims where the relief sought is discretionary. *See supra* note 4.

ble aliens are discouraged from filing dilatory ineffective assistance claims." *Id*. (internal quotation marks omitted).

In addition to the alien's affidavit, the alien must attach five documents or sets of documents to his motion. If any of these documents is unavailable, the alien must explain why. If any of these documents is missing rather than nonexistent, the alien must summarize the document's contents in his affidavit.

## 1.

First, the alien must attach a copy of his agreement, if any, with the lawyer whose performance he alleges was deficient. Where there was no written agreement, the alien must specify in his affidavit what the lawyer had agreed to do, including whether it included the particular step in the proceedings in which the deficient performance is alleged to have occurred. This requirement will enable the Board to determine whether the alleged error was actually within the scope of the lawyer's representation. After all, the mere fact that a lawyer failed to do something—for example, file a petition for review—does not, by itself, establish that the lawyer's conduct was deficient, because the alien may not have retained the lawyer for that purpose. *See Lozada*, 19 I. & N. Dec. at 639 (noting that the alien "has not alleged, let alone established, that former counsel ever agreed to prepare a brief on appeal or was engaged to undertake the task"); *see also, e.g.*, *Beltre-Veloz v. Mukasey*, 533 F.3d 7, 10 (1st Cir. 2008) (holding that the petitioner's motion to reopen had a "fatal flaw" in that it "makes no mention of the nature, scope, or substance of the petitioner's arrangement with [his lawyer], nor does it indicate what communications the petitioner had with the attorney over the years").

## 2.

Second, the alien must attach both a copy of a letter to his former lawyer setting forth the lawyer's deficient performance and a copy of the lawyer's response, if any. (If the alien never received a response from his former lawyer, his affidavit must note the date on which he mailed his letter and state whether he made any other efforts to notify the lawyer.) The letter from the alien must suffice to put the lawyer on notice that the alien intends to file a deficient performance claim and to inform the lawyer of the facts

that the alien alleges in support of the claim. This requirement gives the former lawyer—whose professional competence is being questioned—an opportunity to present his side of the story, and helps to ensure that the Board has the facts necessary to render an informed judgment. As the Board recognized in *Lozada*, this requirement also has the effect of "discouraging baseless accusations" because "the potential for abuse is apparent where no mechanism exists for allowing former counsel, whose integrity or competence is being impugned, to present his version of events if he so chooses." 19 I. & N. Dec. at 639.

### 3.

Third, the alien must attach a completed and signed complaint addressed to the appropriate state bar or disciplinary authorities.[10] This requirement, like the preceding one, discourages baseless accusations and collusion, because it is one thing to file a motion that, even if denied, has the effect of delaying removal and another thing altogether to back that motion with the weight of a disciplinary complaint. *See Assaad*, 23 I. & N. Dec. at 556 (noting that the "bar complaint requirement acts as a protection against collusion between counsel and client to achieve delay in proceedings"). As the Board has explained, the requirement "increases our confidence in the validity of the particular claim, reduces the likelihood that an evidentiary hearing will be needed, and serves our long-term interests in monitoring the representation of aliens by the immigration bar." *Id.*; *cf.* 65 Fed. Reg. at 39,514–15; 73 Fed. Reg. at 76,915.

It should be noted that, under this requirement, the alien need not actually file the complaint with the appropriate state bar or disciplinary authorities, as *Lozada* had required. By making the actual filing of a bar complaint a prerequisite for obtaining (or even seeking) relief, it appears that *Lozada* may inadvertently have contributed to the filing of many unfounded or

---

[10] Where a deficient performance claim is based on the conduct of an accredited representative, *see* 8 C.F.R. § 1292.1(a)(4) (permitting aliens appearing before the Board to be represented by an accredited representative); *cf. Matter of Zmijewska*, 24 I. & N. Dec. 87, 94 (BIA 2007) (holding that the *Lozada* framework applies to accredited representatives), the alien must instead attach a complaint addressed to the Executive Office for Immigration Review disciplinary counsel, because such accredited representatives are subject to disciplinary action under the Executive Office for Immigration Review's professional conduct regulations.

even frivolous complaints. *See, e.g.*, Comment filed by the Committee on Immigration & Nationality Law, Association of the Bar of the City of New York (Sept. 29, 2008), in response to the *Proposed Rule for Professional Conduct for Practitioners—Rules and Procedures, and Representation and Appearances*, 73 Fed. Reg. 44,178 (July 30, 2008) ("Under the *Lozada* Rule, an ineffective assistance of counsel charge is often required in order to reopen a case or reverse or remand an unfavorable decision. The practice of filing such claims is rampant, and places well-intentioned and competent attorneys at risk of discipline."). Such unfounded complaints impose costs on well-intentioned and competent attorneys, and make it harder for state bars to identify meritorious complaints in order to impose sanctions on lawyers whose performance is truly deficient. The new approach is intended to avoid these problems by requiring only that the alien submit to the Board a completed and signed but unfiled complaint, and leaving it to the Board whether to refer the complaint to the state bar or to the Executive Office for Immigration Review disciplinary counsel for further action.[11]

### 4.

Fourth, if the alien's claim is that his former lawyer failed to submit something to the immigration judge or to the Board, he must attach the allegedly omitted item to his motion. For example, if the alien's claim is that his former lawyer failed to submit a brief to the Board, he must submit, in substance and detail if not in form, a copy of the brief that he alleges should have been filed. If the alien's claim is that his former lawyer failed to introduce certain evidence or testimony, he must submit that evidence (directly in the case of physical or documentary evidence and through a witness's affidavit in the case of testimony) to the Board. Moreover, the alien must explain in his affidavit whether he told his former lawyer about the evidence or testimony in question, and if not, why not.

Requiring aliens to submit such material to the Board will reduce delays and promote finality by ensuring that the Board can resolve most deficient performance claims without remanding for evidentiary hearings. In addition, requiring proof that an alien told his lawyer about evidence or testi-

---

[11] Of course, nothing prevents an alien, should he choose to do so, from filing his complaint with the state bar *and* with the Board. Prior filing of a complaint with the state bar simply is not a requirement for the motion to reopen.

mony—or had a good reason for failing to do so—is common sense. After all, if an alien never shared the existence of certain evidence or testimony with his lawyer, it is difficult to fault the lawyer for failing to submit that evidence or testimony to the immigration judge.

## 5.

Fifth and finally, where an alien is represented by counsel in seeking reopening, the motion for reopening shall contain the following signed statement of the new attorney: "Having reviewed the record, I express a belief, based on a reasoned and studied professional judgment, that the performance of my client's former counsel fell below minimal standards of professional competence."[12] This requirement—which is analogous to court of appeals rules requiring lawyers to attest to the existence of circuit splits or to questions of exceptional importance in petitions for rehearing en banc, *see, e.g.*, Third Circuit Rule 35.1 (2008); Federal Circuit Rule 35(b) (2008)—will further discourage meritless claims by serving as a reminder that challenges to the performance of another lawyer should not be made lightly.

## C.

The legal standards set forth in Part IV.A and the evidentiary requirements set forth in Part IV.B are mandatory. That is, to be eligible for a favorable exercise of discretion based on a deficient performance claim, an alien must comply with all requirements that apply. Excusing an alien from compliance with a particular requirement, or deeming "substantial compliance" adequate (as several courts of appeals have done with respect to the

---

[12] A lawyer may not bypass this requirement by preparing a motion to reopen for the alien and then having the alien file the motion pro se. *Cf.* 8 C.F.R. § 1001.1(i) (2008) (defining the term "practice" to mean "the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client") (emphasis added); *id.* § 1001.1(k) (defining the term "preparation, constituting practice," to mean "the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers") (emphasis added). I also note that this requirement to acknowledge the deficient performance of counsel in the prior proceedings is applicable even where the same attorney continues to represent the alien in seeking to reopen the proceedings based on his own prior deficient performance.

*Lozada* factors, *see, e.g.*, *Reyes v. Ashcroft*, 358 F.3d 592, 597–99 (9th Cir. 2004)), would hinder the development of a complete record, making it more difficult for the government to respond and more difficult for the Board to adjudicate the case. It also would undermine the Board's (and the bar's) efforts to monitor the quality of representation before the immigration courts. Finally, excusing compliance in some cases would create uncertainty as to when a requirement will be enforced and when it will be waived. Of course, even if an alien complies with all applicable requirements, the Board is not compelled to reopen proceedings, as reopening ultimately is discretionary. *See, e.g.*, *Doherty*, 502 U.S. at 323.

## D.

Finally, it bears noting that the Board's discretion to reopen on the basis of a lawyer's deficient performance is not limited to conduct that occurred during the agency proceedings. The Board may reopen on the basis of deficient performance that occurred subsequent to the entry of a final order of removal.[13]

In reaching this conclusion, I recognize that, in reviewing claims under the *Lozada* framework, the Board has not spoken consistently on the question of when deficient performance must occur to permit reopening. *See Afanwi*, 526 F.3d at 795–96 (noting that the Board "has issued contradictory opinions on the subject" and citing cases). I recognize also that the courts of appeals have taken conflicting views. *Compare Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1044 n.4 (9th Cir. 2000) ("A claim of ineffective assistance of counsel occurring after the [Board] has ruled may

---

[13] In cases involving claims of this sort, it is not uncommon for the alien to allege that his lawyer never notified him of the Board's decision in his case. To ensure that aliens receive notice of decisions in their cases and to forestall unfounded allegations that they did not, I have directed the Executive Office for Immigration Review to begin sending courtesy copies of final Board decisions to the aliens themselves in addition to sending them to the aliens' lawyers. The Executive Office for Immigration Review intends to do so beginning March 1, 2009. *See* Executive Office for Immigration Review, News Release, *Board to Begin Providing Copy of Decision to Aliens Who Are Represented by Counsel* (Dec. 19, 2008), http://www.usdoj.gov/eoir/press/08/BIAProvidesCourtesyCopy121908.pdf. After that date, aliens will be presumed to have received personal notice of the Board's decision (in addition to notice through counsel) if it was sent to the most recent address the alien provided to the Executive Office for Immigration Review, as required by 8 C.F.R. § 1003.15(d) (2008).

be raised with the [Board] by filing a motion to reopen."), *and Gjondrekaj v. Mukasey*, 269 F. Appx. 106, 108 (2d Cir. 2008) (remanding where the alien's lawyer missed the petition for review filing deadline, and holding that "to the extent the [Board] here concluded that it could not grant reopening or reissuance absent some error by the agency or ineffective assistance before the agency, it failed to apply the correct law"), *with Afanwi*, 526 F.3d at 795–96 (holding that the Board "does not have jurisdiction over an ineffective assistance claim arising out of an alien's counsel's failure to file a timely petition for review with the court of appeals").

In my judgment, the better view, and the one I adopt today, is that the Board has jurisdiction to consider deficient performance claims even where they are predicated on lawyer conduct that occurred after a final order of removal has been entered. The Board has broad discretion to reopen removal proceedings, and nothing in the statute or the regulations limits the grounds for reopening to events that occurred before the agency or prior to the entry of the final administrative order of removal. *See Firmansjah v. Ashcroft*, 347 F.3d 625, 627 (7th Cir. 2003) (explaining, in a case where the alien's lawyer had missed the petition-for-review filing deadline, that "[t]he Board of Immigration Appeals . . . has authority to reopen and revise its decisions on account of new developments" and "nothing prevents the Board from entering a new removal order, which is subject to a fresh petition for review"). In holding otherwise, the Fourth Circuit in *Afanwi* relied on 8 C.F.R. § 1003.1(d)(3)(ii) to conclude that the Board's jurisdiction is limited to "questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges." 526 F.3d at 795–96. But that regulation addresses only the scope and standard of review by the Board. It does not purport to restrict the Board's jurisdiction or to limit the Board's broad authority to reopen removal proceedings.

Deficient performance claims based on conduct that occurred after entry of a final order of removal shall be evaluated under the standards set forth in this opinion for all deficient performance claims. Thus, an alien must comply with the filing requirements set forth in Part IV.B, and must establish, among other things, that, but for the deficient performance, it is more likely than not that he would have been entitled to the ultimate relief he was seeking, as provided in Part IV.A. It is beyond the scope of this opinion to identify all the situations in which reopening after entry of a final order of removal may be warranted. There are, however, some situations in

which it clearly would be unwarranted, such as when the deficient performance claim involved the quality of a lawyer's briefs or arguments before a court of appeals—that is, when the claim involved conduct in proceedings conducted well after the administrative order of removal became final, in a separate tribunal in a separate branch of government.

## V.

Before evaluating the Board's orders in the instant cases, it is necessary to address one final matter: how, if at all, the framework announced in this opinion should be applied to motions to reopen (including the three at issue here) that were filed prior to this opinion. The general rule is that an agency or court should apply the law in effect at the time that it renders its decision. *See Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 716 (1974); *see also Meghani v. INS*, 236 F.3d 843, 846 (7th Cir. 2001). In light of that rule, the Board and immigration judges should apply the substantive standards set forth in Part IV.A above to motions to reopen based on a lawyer's deficient performance, regardless of when such motions were filed. It would be unfair, however, to apply the new filing requirements set forth in Part IV.B to such motions, since aliens may have filed them in good faith reliance on *Lozada*. *See Bradley*, 416 U.S. at 720 (stating that changes in the law should not be applied to pending cases where those changes would result in the imposition of "new and unanticipated obligations" without adequate notice). Accordingly, I hold that the Board and immigration judges should apply the new filing requirements only with respect to motions filed after today; with respect to motions filed prior to this opinion, they should continue to apply the *Lozada* factors.[14]

With respect to the instant cases, then, the substantive standards set forth in Part IV.A above apply, but the new filing requirements set forth in Part IV.B do not. Applying those rules, I affirm the Board's decisions denying respondents' motions to reopen.

In *Matter of Compean*, respondent's motion was without merit for three reasons. First, applying the substantive standards set forth in this opinion,

---

[14] Given the potential delay between signing this opinion and its publication, it may be unreasonable to expect aliens to comply with the new filing requirements immediately. Accordingly, the Board and immigration judges may allow amendment of motions filed in the next few weeks to comply with the new filing requirements.

respondent has failed to establish either that his former lawyer committed an "egregious" error or that he was prejudiced by any deficiencies in the lawyer's conduct. As noted, respondent's self-described "most important" claim was that his former lawyer had failed to submit his Form I-130 visa petition to the Immigration Judge, but that form was in fact part of the record. Thus, he has shown neither that his lawyer's actions were egregious nor that, but for his lawyer's performance, it is more likely than not that he would have established the "exceptional and extremely unusual hardship" required for cancellation of removal. INA § 240A(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D). The Board therefore properly denied respondent's motion to reopen on the ground that he had failed to establish prejudice. Finally, as the Board noted, respondent failed to comply with *Lozada*'s requirement of filing a disciplinary complaint. Under *Lozada*, that alone warranted denial of his motion.

In *Matter of Bangaly*, respondent's motion was properly denied on either of two grounds. First, under *Lozada* (as under the new requirements set forth in this opinion), respondent was required to give his former lawyer notice of his alleged deficiencies and a chance to respond. As discussed above, such notice is important because it discourages baseless claims and because it makes it more likely that the Board can address the motion without the need to remand for a hearing. Yet, as the Board found, respondent failed to show that he complied with this requirement. Second, respondent has failed to show prejudice under the standard announced in this opinion. His motion to reopen was premised on his former lawyer's failure to file a brief with the Board appealing the Immigration Judge's denial of an additional continuance. But neither here nor before the Board has respondent made any effort to show that, had his lawyer filed a brief, he likely would have obtained the continuance, let alone that he likely would have been permitted to remain in the United States.

In *Matter of J-E-C-*, unlike the other two cases, respondents appear to have complied with the *Lozada* factors. Nevertheless, respondents' motion was properly denied for failure to establish prejudice. Among other things, the Board addressed the merits of each of the four points of error identified in respondents' notice of appeal before it affirmed the Immigration Judge's "thorough and well-reasoned decision" (Apr. 8, 2008). The Board also considered the brief submitted by respondents' new lawyer and found it unpersuasive, thus "affirming . . . that the respondent[] did not suffer prej-

udice" from the failure of his former lawyer to file an appellate brief. *Id*. Under the standard of prejudice adopted in this opinion, the Board's decision was correct.

## VI.

In sum, for the reasons stated above, I overrule *Lozada* and *Assaad* to the extent they are inconsistent with the constitutional conclusions in this opinion, and I affirm the Board's decisions denying reopening in each of the matters before me.

MICHAEL B. MUKASEY
*Attorney General*