# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-1317/2406

_____

| | | |
|---|---|---|
| Anar Rafiyev, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petitions for Review of Orders |
| v. | * | of the Board of Immigration |
| | * | Appeals. |
| Michael B. Mukasey, Attorney | * | |
| General of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 13, 2008
Filed: August 5, 2008

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Anar Rafiyev petitions for review of two decisions of the Board of Immigration Appeals. The first decision denied Rafiyev's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), and determined that his application for asylum was frivolous. The second decision denied Rafiyev's motion to reopen based on alleged ineffective assistance of counsel. We deny the petition in No. 07-1317, but grant the petition in No. 07-2406 and remand that case for further consideration.

I.

In July 2003, Rafiyev traveled to the United States using a visa for a "nonimmigrant exchange visitor." In December 2003, his visa status was converted to "student," on the condition that he enroll at an educational institution. When Rafiyev never enrolled in school, the Department of Homeland Security (DHS) began proceedings to remove him to his native country of Azerbaijan. Rafiyev conceded that he was subject to removal for violating the conditions of his visa, but filed an application for asylum, withholding of removal, and protection under the CAT. Rafiyev claimed that he and his family had been subjected to persecution by the Azerbaijan government on account of their Armenian nationality and membership in a particular social group, and that he had a well founded fear that he would be persecuted if he returned to Azerbaijan.

An immigration judge (IJ) denied Rafiyev's applications for relief after finding that Rafiyev was "completely, utterly not credible." The IJ found that six documents submitted by Rafiyev were fraudulent. These documents were a birth certificate from the U.S.S.R., a birth certificate from Azerbaijan, a death certificate for Rafiyev's mother, a death certificate for Rafiyev's brother, a medical record, and a police report. Relying on *In re O- D-*, 21 I. & N. Dec. 1079 (BIA 1998), the IJ concluded that the counterfeit documents not only discredited Rafiyev's claims concerning identity and nationality, but also supported a finding that his overall claim was not credible. The IJ further found that the filing of six fraudulent documents in support of an application for asylum qualified as the filing of a frivolous application, and that Rafiyev therefore should be barred permanently from receiving any immigration benefit from the United States. *See* 8 U.S.C. § 1158(d)(6). In connection with her decision that Rafiyev did not qualify for asylum, the IJ also found that United States government officials complied with regulations addressing the confidentiality of asylum applications during

their overseas investigation of Rafiyev's documents. *See* 8 C.F.R. § 208.6. As such, the IJ implicitly rejected any contention by Rafiyev that a violation of the confidentiality provisions provided a new and independent basis for asylum. *See Averianova v. Mukasey*, 509 F.3d 890, 899 (8th Cir. 2007).

On administrative appeal, the Bureau of Immigration Appeals (BIA) concluded that even accepting Rafiyev's arguments regarding two of the six documents cited by the IJ (i.e., the medical record and the police report), he had not raised meritorious challenges regarding the remaining four documents found to be fraudulent. The BIA thus found no reason to disturb the IJ's adverse credibility finding or her finding that Rafiyev filed a frivolous application. The BIA also found no reason to set aside the IJ's conclusion that government officials did not breach the confidentiality regulations.

Rafiyev then filed a motion to reopen the proceedings, alleging that he received ineffective assistance of counsel during his appeal to the BIA. The BIA found that Rafiyev's specific allegations of ineffective assistance were not supported by the record, and therefore denied the motion to reopen.

II.

A.

In dismissing Rafiyev's administrative appeal on his asylum claim, the BIA did not expressly adopt the decision of the IJ, and declined to accept certain portions of it. The BIA did say, however, that Rafiyev had raised no meritorious challenge to the IJ's findings that four disputed documents were fraudulent, and that the Board found no reason to disturb the IJ's credibility findings. We read the BIA opinion, therefore, to adopt the IJ's reasoning in relevant part, and we thus consider both the BIA's opinion and the decision of the IJ in our review. *See Setiadi v. Gonzales*, 437 F.3d

710, 713 (8th Cir. 2006). Administrative findings of fact, including findings on credibility, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Singh v. Gonzales*, 495 F.3d 553, 556 (8th Cir. 2007). The BIA's discretionary decision to deny asylum is conclusive unless "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

A claim for asylum may be rejected solely on the ground that the applicant's claim is not credible. *Falaja v. Gonzales*, 418 F.3d 889, 894-95, 897 & n.4 (8th Cir. 2005). The BIA or an IJ may reach an adverse credibility determination based on the applicant's submission of fraudulent documents, if the petitioner fails to offer a legitimate explanation for the suspected fraud. *Onsongo v. Mukasey*, 457 F.3d 849, 854 (8th Cir. 2006). In reaching that credibility finding, the agency must "give reasons that are specific enough that a reviewing court can appreciate the reasoning behind the decision and cogent enough that a reasonable adjudicator would not be compelled to reach the contrary conclusion." *Chen v. Mukasey*, 510 F.3d 797, 802 (8th Cir. 2007) (internal citation omitted).

Substantial evidence on the record as a whole supports the BIA's conclusion that at least four documents submitted by Rafiyev were fraudulent. The DHS presented testimony from a forensics document examiner that the U.S.S.R. birth certificate submitted by Rafiyev was counterfeit, because it did not include a watermark that would appear on a genuine U.S.S.R. birth certificate, and because it was printed using a color inkjet printer rather than "a continuous line offset type printing" used on the genuine articles. The DHS also presented results of an investigation by the United States Embassy in Azerbaijan showing that Rafiyev's Azerbaijan birth certificate and the two Azerbaijan death certificates were fraudulent. This evidence included a finding that the language used in the certificates was not the official language, and that the seals applied to the certificates did not match official seals. The embassy also reported that the signature on the birth certificate did not

match an exemplar from the person who would have signed such a document in 1984, and that the woman who purportedly signed the death certificates said the signatures appearing on those documents were not hers. The investigation further revealed that there were "no recorded incidents in the office's registration books that match those described on the death certificates."

Rafiyev testified in response that he relied on his father to provide documents in support of his claim, and that he had no knowledge about any fabrication. He also suggested that the Ministry of Internal Affairs in Azerbaijan, which produces documents of these nature, probably gave him counterfeit records, because the ministry was hostile to persons of Armenian descent, and sought to cause trouble for him if he emigrated. Rafiyev alleged that the ministry had persecuted him and his family, and he portrayed the alleged provision of flawed documents as a continuation of this mistreatment. Even assuming nefarious activity by the Azerbaijan government is a plausible explanation for the three fraudulent Azerbaijan documents cited by the BIA, however, Rafiyev's theory does not compel the conclusion that the IJ and the BIA erred by declining to accept it, because the alternative conclusion was also reasonable. Nor does Rafiyev's suspicion about the actions of the Azerbaijan government provide any explanation for the U.S.S.R. birth certificate that the IJ and the BIA also found to be counterfeit. Accordingly, we conclude that the BIA's credibility finding was supported by substantial evidence.

Rafiyev also argues that the BIA erroneously concluded that the government complied with the federal regulation concerning confidentiality when processing his asylum application. The regulation provides that "[i]nformation contained in or pertaining to any asylum application . . . shall not be disclosed without the written consent of the applicant." 8 C.F.R. § 208.6(a). The DHS transmitted several documents related to Rafiyev's application to the United States Embassy in Baku, Azerbaijan, for verification, and this disclosure was consistent with the confidentiality regulation. *Id*. § 208.6(c)(1). Rafiyev argues, however, that "there is a distinct

possibility" that confidentiality was breached during the investigation conducted by the American embassy in Azerbaijan.

The BIA recognized that confidentiality is breached when unauthorized disclosure of information pertaining to an asylum application is of a nature that allows the third party to make a reasonable inference that the applicant has sought asylum, but concluded that the regulations had not been violated in this case. The BIA observed that Rafiyev was not identified as an asylum applicant during the investigation, and there was no disclosure that the investigation was carried out because of an asylum application. The IJ also found that the investigator assigned to Rafiyev's case frequently verifies documents in connection with visa applications, and the BIA concluded on this basis that the fact of an investigation was therefore insufficient, in and of itself, to give rise to a reasonable inference that Rafiyev sought asylum.

We agree with the BIA's conclusion that the embassy's investigation of Rafiyev's documents did not give rise to a reasonable inference that Rafiyev was seeking asylum. The DHS did not reveal to the American embassy in Baku that the investigation related to an asylum application, but told the embassy only that Rafiyev was seeking an "immigration benefit." The DHS and the Department of State also specifically reminded the embassy with every correspondence to maintain confidentiality in accordance with 8 C.F.R. § 208.6. After the investigation, the Department of State confirmed that the embassy in Baku complied with 8 C.F.R. § 208.6, because "[t]he Embassy did not indicate that an asylum application was involved and did not identify the respondent as an asylum applicant." Rafiyev contends that "general assurances" of compliance with the regulations are not sufficient, but he bears the burden to establish eligibility for asylum, and he has not developed evidence to undermine the BIA's conclusion that embassy officials proceeded consistent with their representations and with the regulations.

For these reasons, we conclude that the BIA's denial of Rafiyev's application for asylum was not manifestly contrary to law or an abuse of discretion. Because Rafiyev's claims for withholding of removal and protection under the CAT are based on the same underlying factual allegations, and all of the allegations relate to alleged persecution based on statutory grounds giving rise to refugee status, the BIA did not err in denying those claims as well. *See Samedov v. Gonzales*, 422 F.3d 704, 708 (8th Cir. 2005).

B.

The IJ also found that Rafiyev submitted a frivolous application for asylum, such that he is permanently ineligible for immigration benefits under the Immigration and Nationality Act (INA). 8 U.S.C. § 1158(d)(6). The BIA's only mention of frivolousness was in a sentence that concluded the agency's analysis of Rafiyev's credibility: "Accordingly, we find no reason to disturb the Immigration Judge's adverse credibility finding or her finding that the respondent filed an asylum application that was frivolous." Rafiyev now argues that the BIA erred by failing to provide an analysis of the IJ's frivolousness finding.

We reject Rafiyev's challenge to the adequacy of the BIA's reasoning, because Rafiyev did not raise the issue of frivolousness in his administrative appeal to the BIA. We have reviewed the brief that Rafiyev filed with the BIA, and there is no challenge to the IJ's finding on frivolousness. As the issue was not presented, the BIA did not err by failing to address it thoroughly.

Rafiyev also challenges the manner in which the IJ made her frivolousness finding, asserting that he was not given sufficient opportunity to account for the specific concerns on which the IJ based her ruling, and arguing that the IJ did not find that Rafiyev *knowingly* submitted fraudulent documents. *See generally Kifleyesus v. Gonzales*, 462 F.3d 937, 944-45 (8th Cir. 2006); *In re Y-L-*, 24 I. & N. Dec. 151, 155

(BIA 2007). We decline to address these points, because Rafiyev failed to exhaust his remedies when he did not raise the frivolousness issue before the BIA. *See Etchu-Njang v. Gonzales*, 403 F.3d 577, 582 (8th Cir. 2005). Although we have noted the possibility that exhaustion can sometimes be excused where other parties have raised the issue, *see Frango v. Gonzales*, 437 F.3d 726, 729 (8th Cir. 2006), and some courts have held that an issue is exhausted if the BIA thoroughly addresses an issue *sua sponte*, *Sidabutar v. Gonzales*, 503 F.3d 1116, 1119-22 (10th Cir. 2007); *Socop-Gonzales v. INS*, 272 F.3d 1176, 1186 (9th Cir. 2001); *contra Amaya-Artunduaga v. United States Attorney General*, 463 F.3d 1247, 1250 (11th Cir. 2006), the record in this case is insufficient to persuade us that the policy concerns underlying the exhaustion requirement have been satisfied. Rafiyev's brief did not challenge the frivolousness finding or the IJ's procedure in making the finding; the DHS submitted only a one-page letter brief, which addressed the merits of the asylum claim and also stated summarily that the IJ correctly determined that Rafiyev filed a frivolous asylum application, (A.R. 127); the BIA stated summarily that there was no reason to disturb the finding on frivolousness. We need not decide whether arguments by the DHS or discussion by the BIA ever can exhaust an issue not raised by the petitioner, because the meager record created here is insufficient to do so.

III.

Finally, Rafiyev argues that the BIA abused its discretion by denying his motion to reopen. Rafiyev sought to reopen his case on the ground that he received ineffective assistance of counsel before the BIA, citing *Matter of Lozada*, 19 I. & N. Dec. 637, 638 (BIA 1988). Specifically, he argued that his counsel failed to address the IJ's findings that Rafiyev submitted six fraudulent documents, that he was not credible, and that he filed a frivolous asylum application. He further alleged that counsel should have objected to the IJ's failure to rule "on the merits" of his asylum claim. Rafiyev recognized that a motion to reopen is discretionary, *see INS v. Abudu*,

485 U.S. 94 (1988), but urged that he satisfied the criteria for relief established by *Matter of Lozada*.

The BIA characterized Rafiyev's motion as a "due process based ineffective assistance of counsel claim." Citing this court's decision in *Obleshchenko v. Ashcroft*, 392 F.3d 970, 972 (8th Cir. 2004), the BIA reasoned that to prevail on such a claim, the alien must show that "counsel's performance was so inadequate that it may well have resulted in a deportation that would not otherwise have occurred." *See also Matter of Lozada*, 19 I. & N. Dec. at 638 ("Ineffective assistance of counsel in a deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case"). The BIA then denied the motion. The BIA observed that counsel presented extensive factual and legal arguments regarding the IJ's adverse credibility finding and the documents found to be fraudulent. It further ruled that although the issue of frivolousness was not specifically argued in the administrative appeal, the IJ's finding was based on Rafiyev's submission of fraudulent documents, and the IJ's reliance on those documents was discussed at length in the administrative appeal brief. As for "the merits" of the asylum claim, the BIA reasoned that the IJ rejected Rafiyev's claim based on lack of credibility, and simply declined to make an alternative holding premised on the assumption that Rafiyev's allegations were true. The BIA concluded that under these circumstances, counsel had no reasonable basis for arguing the merits of the asylum claim in an administrative appeal.

Rafiyev now argues that the BIA abused its discretion by declining to reopen a case that met the standards set forth in *Matter of Lozada*, and by ignoring the fact that he suffered prejudice due to incompetent counsel. In particular, Rafiyev notes the BIA's acknowledgment that counsel did not specifically challenge the IJ's finding of frivolousness in the administrative appeal, and argues that he was prejudiced by counsel's failure to urge that the IJ made no finding as to whether Rafiyev *knowingly*

submitted fraudulent documents in the removal proceeding. *See In re Y-L-*, 24 I. & N. Dec. at 155.

The government responds that an alien has no constitutional right to effective counsel in a removal proceeding, and that the petition for review should be denied on this basis. The government urged this position before the BIA in 2003, but the agency concluded that an alien's right to effective counsel under the Due Process Clause was "settled law in most circuits," and that the BIA was "bound by this precedent." *In re Assad*, 23 I. & N. Dec. 553, 560 (BIA 2003), *pet. for review dismissed*, 378 F.3d 471 (5th Cir. 2004). The BIA thus continues to apply *Matter of Lozada* to determine whether an alien can establish a "constitutional due process violation" based on ineffective counsel. *Id.*

Our circuit, however, has never recognized a constitutional right to effective counsel in a removal proceeding, and the BIA cited no such authority from this court in *In re Assad*. To the contrary, in *Obleshchenko v. Ashcroft*, 392 F.3d 970 (8th Cir. 2004), we expressed "serious doubts . . . that a fifth amendment right to counsel exists in civil deportation proceedings," because "[c]onstitutional rights are rights against the government," and we found it "difficult to see how an individual, such as [an alien's] attorney, who is not a state actor, can deprive anyone of due process rights." *Id.* at 971-72. We assumed the existence of a constitutional right in that case, however, because other circuits had so held, *e.g.*, *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 131-32 (3d Cir. 2001); *Lozada v. INS*, 857 F.2d 10, 13-14 (1st Cir. 1988), and the government did not argue to the contrary. 392 F.3d at 972. Since then, we construed *Obleshchenko* as "squarely rejecting an absolute constitutional right to effective assistance of counsel with respect to asylum claims." *Habchy v. Gonzales*, 471 F.3d 858, 866 (8th Cir. 2006).

The Seventh Circuit has said flatly that there is "no constitutional ineffective-assistance doctrine" in removal cases, *Magala v. Gonzales*, 434 F.3d 523, 525 (7th

Cir. 2005), and the Fourth Circuit recently reached the same conclusion. *Afanwi v. Mukasey*, 526 F.3d 788, 798 (4th Cir. 2008). While acknowledging that other circuits have recognized a due process right to effective assistance of counsel, *Afanwi* observed that these decisions grew out of *Paul v. INS*, 521 F.2d 194 (5th Cir. 1975), a decision that "does not squarely recognize a right to effective assistance of retained counsel but merely suggests that such a right, if it existed, would be grounded in the Fifth Amendment rather than the Sixth." 526 F.3d at 797 & nn. 34-35. *See, e.g., Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 & n.2 (5th Cir. 2001); *Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986). Like *Obleshchenko*, the Fourth Circuit emphasized that "an alien's counsel cannot violate his client's Fifth Amendment rights unless he can be said to be engaging in state action." *Afanwi*, 526 F.3d at 798 & n.40. The court then concluded that the alien's counsel was not a state actor, nor was there "a sufficient nexus between the federal government and counsel's ineffectiveness such that the latter may fairly be treated as a governmental action." *Id*. at 799. *See also Singh v. Gonzales*, 499 F.3d 969, 980 (9th Cir. 2007) (Wallace, J., concurring) (concluding that the Ninth Circuit has "mistakenly incorporated a criminal case constitutional right into civil cases," and thereby "unnecessarily complicated an already overburdened immigration enforcement process").

Consistent with *Obleshchenko* and *Habchy*, we hold that there is no constitutional right under the Fifth Amendment to effective assistance of counsel in a removal proceeding. Removal proceedings are civil; there is no constitutional right to an attorney, so an alien cannot claim constitutionally ineffective assistance of counsel. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). To the extent Rafiyev's counsel was ineffective, the federal government was not accountable for her substandard performance; it is imputed to the client. *Magala*, 434 F.3d at 525. Because the constitutional claim was destined to fail on this basis, the BIA did not abuse its discretion by refusing to reopen Rafiyev's case on constitutional grounds.

Read generously, however, Rafiyev's brief to the BIA in support of his motion to reopen could be understood to raise a non-constitutional claim that the BIA should exercise discretionary authority to reopen his proceeding based on ineffective assistance of counsel, even though such a remedy is not compelled by any statute or the Constitution. *Cf. Stroe v. INS*, 256 F.3d 498, 501 (7th Cir. 2001) (interpreting *Matter of Lozada*, before *In re Assad*, to recognize an administrative right to ineffective assistance of counsel in "egregious circumstances," and assuming without deciding that the BIA has discretionary authority to do so). The BIA's decision here was limited to considering whether Rafiyev had established a "due process based ineffective assistance claim." In 2003, the BIA acknowledged "some ambiguity" in the reasoning of *Matter of Lozada*, and recognized that *Matter of Lozada* could be read to set forth standards under which the BIA will exercise its limited self-certification authority. *In re Assad*, 23 I. & N. Dec. at 558; *see* 8 C.F.R. § 1003.1(c). *In re Assad*, however, ultimately grounded the vitality of *Matter of Lozada* in binding judicial precedent that recognized a constitutional right to effective counsel, 23 I. & N. Dec. at 560, and the decision made no clear statement on the question whether the BIA asserts independent administrative authority to grant relief for ineffective assistance of counsel.

Because the BIA did not address a contention by Rafiyev that he is entitled to relief based on the agency's discretionary authority, without regard to a constitutional right to due process, we grant the petition for review and remand for the BIA to address that claim in the first instance. *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002). If the BIA does recognize a purely administrative right to effective assistance of counsel, we note the government's concession that the BIA has not yet determined whether Rafiyev satisfied the requirements set forth in *Matter of Lozada* with respect to counsel's performance in challenging the finding of frivolousness during Rafiyev's administrative appeal. Brief for Respondent in No. 07-2406, at 19 n.4.

\*          \*          \*

-12-

For the foregoing reasons, the petition for review is denied in No. 07-1317, the petition for review is granted in No. 07-2406, and the latter case is remanded for further consideration.

_____