# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1321

_____

Chantal Nayoh Ntangsi,           *
                                          *

          Petitioner,         *
                                          * Petition for Review from an Order of
                                          * the Board of Immigration Appeals.
                v.               *
                                          *

Eric H. Holder, Jr., Attorney General *
of the United States of America,[1]   *
                                          *

         Respondent.       *

_____

Submitted: November 14, 2008
Filed:  February 9, 2009

_____

Before MURPHY, HANSEN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Chantal Nayoh Ntangsi (Ntangsi), a native and citizen of Cameroon, seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) decision finding Ntangsi removable as charged

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

and denying her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We deny the petition for review.

## I. BACKGROUND

Ntangsi attempted to enter the United States through Miami, Florida, on September 2, 1999. That same day, Ntangsi was charged with being removable for failing to possess a valid entry document and because she was likely to become a public charge because she had no financial means of support. On February 21, 2002, Ntangsi was also charged with being an alien who sought to enter the United States by fraud.

Ntangsi applied for asylum on June 13, 2000, claiming she was seeking asylum on the basis of political opinion. Ntangsi stated her father was an active and vocal member of the Social Democratic Front (SDF) and that he was arrested in March of 1995 at an SDF rally. As a result of her father's arrest, Ntangsi claimed military officers came to Ntangsi's house and beat Ntangsi and her family, requiring the family to undergo one week of hospitalization. Ntangsi declared her father was also arrested later in 1995 and again on January 16, 1996, when he was detained for a month and tortured. Ntangsi asserted her father lost his job with the Cameroon Development Corporation (CDC), a governmental agency in Cameroon, because of the detention, and had to return to a village to farm and raise livestock.

Ntangsi maintains she is not a member of the SDF. However, Ntangsi reported she was arrested and beaten on May 20, 1999, when she and eight other students at Unity College refused to march wearing uniforms of the ruling political party in Cameroon, and wore SDF uniforms instead. Ntangsi stated she and the other students were detained for three days in a single cell and released after affixing fingerprints to a statement.

Ntangsi also contended her uncle published a newspaper article on June 18, 1999, that was critical of the government. When the police came looking for her uncle, he was not home. When the police returned a second time, Ntangsi claims the police told her about her uncle's article and arrested Ntangsi, explaining she was being arrested in place of her uncle so her uncle would report himself to the police. Ntangsi testified she was beaten, kicked, raped by two policemen, and released after two days in detention. The police allegedly told her they would return to look for her uncle and if they did not find him they would arrest Ntangsi again and detain her forever. Ntangsi asserts she went to a Franciscan convent, where she stayed for two months before the nuns arranged her flight to the United States.

In support of her application for asylum, Ntangsi submitted evidence, including a letter from her father dated January 10, 2001, stating he earned a living raising livestock after he lost his job with the CDC in 1997. Ntangsi also submitted a letter from Chi Nubila Frida (Nubila), a nurse who reported she treated Ntangsi and her family at the hospital after they were beaten.

On February 25, 2003, the IJ issued a written decision finding Ntangsi was removable on the three charges of removability. The IJ also made an adverse credibility finding, noting Ntangsi's testimony about her father's employment history was inconsistent with documentary evidence. The documentary evidence included a United States Embassy investigation indicating Ntangsi's father remained employed at the CDC during the period of time Ntangsi claimed he was raising livestock. The government also submitted Ntangsi's father's leave statements and career record. In contrast to Ntangsi's testimony she was not a member of the SDF, a letter from the SDF stated Ntangsi was a member. Finally, the IJ determined Ntangsi failed to corroborate her claim with either her uncle's article or with a letter from the convent or the nuns.

On February 6, 2004, at both parties' request, the BIA remanded the decision so the IJ could consider newly submitted evidence. The government submitted a document from the United States Embassy investigation stating the Embassy's fraud investigator contacted the Director of Limbe General Hospital, where Ntangsi and her family were allegedly treated. According to the hospital director, Nubila worked as a nurse at the hospital, but Nubila would have had no authority to sign such a document on behalf of the hospital. The hospital director also checked the hospital's records and told the Embassy investigator he was unable to find records on the names mentioned in Nubila's attestation. The hospital director considered Nubila's attestation false. In response, Ntangsi submitted another attestation from Nubila who repeated the claim she had treated Ntangsi and her family at the hospital and discussed the hospital's poor record keeping. Ntangsi also submitted a letter from her father stating he was fired from the CDC in 1997 and reinstated in 2001.

The IJ issued an oral opinion on June 28, 2006, finding Ntangsi removable as charged and denying her application for asylum, withholding of removal, and protection under the CAT. The IJ again made an adverse credibility finding. The IJ noted the inconsistency between Ntangsi's testimony her father was fired from his job because of his political affiliations and the government's evidence Ntangsi's father had been employed by the CDC almost continuously for many years. The IJ rejected Ntangsi's claim she was unaware of her father's continued employment with the CDC. The IJ also noted the contradictory evidence regarding Ntangsi's claimed medical treatment and Ntangsi's claim she was not a member of the SDF. The IJ observed Ntangsi failed to provide any documentation supporting her claim that her uncle wrote an article that was the cause of her alleged arrest, despite the fact that the *Cameroon Herald* is a well recognized newspaper and the article should be available. The IJ also found it significant Ntangsi provided no corroboration for her claim from the Franciscan nuns, who played a crucial role in her escape from Cameroon, and with whom she allegedly hid for two months. Based on these findings, the IJ denied Ntangsi's application for asylum, withholding of removal, and CAT protection.

Ntangsi appealed the IJ's decision to the BIA, challenging the IJ's adverse credibility finding and arguing the IJ relied on irrelevant factors and ignored evidence. Ntangsi also contended the IJ erred by relying on documents produced during the overseas investigation, claiming the investigation was unreliable. The BIA dismissed Ntangsi's appeal and affirmed the IJ's finding Ntangsi lacked credibility and failed to meet her burden of proof. The BIA also determined the IJ properly considered a United States Embassy report finding Ntangsi's father held his employment with the CDC much later than Ntangsi alleged. Ntangsi now challenges the adverse credibility finding, the finding that she failed to provide sufficient corroboration of her claims, and the denial of her asylum, withholding of removal, and CAT claims.[2]

## II. DISCUSSION

### A. Adverse Credibility Finding

Ntangsi argues the IJ's adverse credibility finding was erroneous and the BIA "rubber-stamped" the IJ's decision without adequately reviewing the records to determine whether substantial evidence supported the IJ's adverse credibility finding. "Administrative findings of fact, including findings on credibility, are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Al Milaji v. Mukasey, 551 F.3d 768, 772 (8th Cir. 2008) (quoting Rafiyev v. Mukasey, 536 F.3d 853, 856 (8th Cir. 2008)). "Credibility findings in particular are entitled to much weight because the IJ sees the witness testify and is therefore in the

---

[2]In her statement of issues, Ntangsi also alleges the United States Embassy report was "questionable" and the government's overseas investigator was "unreliable," under Ezeagwuna v. Ashcroft, 325 F.3d 396 (3d Cir. 2003), and Cordero-Trejo v. I.N.S., 40 F.3d 482, 487 (1st Cir. 1994). In her brief, Ntangsi fails to explain why the report was questionable and the investigator unreliable, fails to discuss how the reasoning of Ezeagwuna or Cordero-Trejo applies to her case, and otherwise fails to address these issues. Because Ntangsi did not argue these issues in her brief, we will not review them. See United States v. Simmons, 964 F.2d 763, 777 (8th Cir. 1992) ("As a general rule, an appellate court may review only the issues specifically raised and argued in an appellant's brief.").

best position to determine his or her credibility." Id. (quoting Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006)). We give deference to "an [IJ']s credibility finding where the finding is supported by a specific, cogent reason for disbelief." Id. (citing Sow v. Mukasey, 546 F.3d 953, 956 (8th Cir. 2008)); Perinpanathan v. I.N.S., 310 F.3d 594, 597 (8th Cir. 2002) (quotation and citations omitted).

The IJ based the adverse credibility finding in part on inconsistencies regarding Ntangsi's father's employment history with the CDC, rejecting Ntangsi's contention she was unaware of her father's continued employment with the CDC. Ntangsi argues her father's employment with the CDC is not central to her claim, and the IJ erred in placing so much emphasis on this inconsistency. "Inconsistencies or omissions in an asylum application that relate to the basis of persecution are not minor but are at 'the heart of the asylum claim.'" Esaka v. Ashcroft, 397 F.3d 1105, 1110 (8th Cir. 2005) (quoting Kondakova v. Ashcroft, 383 F.3d 792, 796 (8th Cir. 2004)).[3] Ntangsi claims her family was beaten and hospitalized due to her father's support of the SDF. Ntangsi also maintained her father was fired from his job with the CDC because of his support of the SDF and his prolonged detention. If Ntangsi's father actually remained employed with the CDC during the time Ntangsi stated he was raising livestock, this fact casts doubt on Ntangsi's claim she and her family were ever harmed or persecuted because Ntangsi's father supported the SDF. We agree with the BIA's determination that "the abuse [Ntangsi] alleges she received during her second arrest related to activities of her uncle was allegedly much worse. Nonetheless, the first arrest and her father's political affiliations remain quite important to her case." We therefore

----

[3]The REAL ID Act of 2005 allows an IJ to make a credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Al Milaji, 551 F.3d at 772 n.2. (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). This provision applies only to aliens who applied for asylum or related relief on or after May 11, 2005. Id. Because Ntangsi filed her application for asylum, withholding of removal, and protection under the CAT in 2000, this specific statutory standard does not apply in Ntangsi's case.

conclude the inconsistency in Ntangsi's father's employment history with the CDC goes to the heart of Ntangsi's asylum claim.

In addition to Ntangsi's father's employment with the CDC, the IJ noted inconsistencies regarding whether Ntangsi was actually a member of the SDF. The IJ also observed inconsistencies between nurse Nubila's testimony and the hospital director's statements that (1) the medical records do not indicate any treatment of Ntangsi and her family, and (2) Nubila was not authorized to sign such a statement on behalf of the hospital. These factual findings are amply supported in the record, and the IJ provided "specific, cogent reasons" for the adverse credibility finding. We therefore give deference to the IJ's adverse credibility finding.

### B.      Corroboration of Ntangsi's Claims

Ntangsi contends it was unreasonable for the IJ and BIA to require her to corroborate her claims because her claims were not reasonably subject to verification. The IJ and the BIA may require corroborating evidence where it is reasonable to do so. See Khrystotodorov v. Mukasey, 551 F.3d 775, 782 (8th Cir. 2008) (citing Eta-Ndu v. Gonzales, 411 F.3d 977, 984 (8th Cir. 2005)). "We may not reverse the IJ's determination with respect to the availability of corroborating evidence unless a reasonable trier of fact would be compelled to conclude that the evidence is unavailable." Id. (citing 8 U.S.C. § 1252(b)(4)).

Regarding the nuns with whom Ntangsi allegedly hid for two months, the IJ declared,

> The court just does not understand why we do not have any sort of corroboration of any kind from this recognized religious organization. This is a Catholic religious order, and there is every reason to believe that [Ntangsi] would be able to contact them and get corroborating information. This has not been done.

The court views this as a case where corroboration is very crucial. We have some very significant contradictions in the evidence that has been presented by [Ntangsi]. . . . The people who had the most contact with [Ntangsi] during the time when she asserts she was having the most serious problems in Cameroon are the nuns with whom she hid. Now [Ntangsi] just has not obtained what this Court believes is meaningful corroborating evidence that would support her claim that she was detained, abused in detention, fled to the convent for safety, and then was the beneficiary of what sounds like a great deal of activity by the nuns to assist her in leaving the country.

The IJ also referenced Ntangsi failed to produce a copy of the anti-government newspaper article allegedly written by her uncle which Ntangsi claimed led to her detention and rape, even though the *Cameroon Herald* is a well-recognized newspaper and the article should be available. If the police lied about the article's existence, Ntangsi still did not indicate she contacted the *Cameroon Herald* to obtain a statement about the existence or non-existence of such an article.

Although Ntangsi contends it would place the nuns in danger if they acknowledged they harbored her and helped her escape, there is no evidence in the record Ntangsi made any attempt to contact the nuns and request corroboration. Ntangsi has provided no explanation for her failure to obtain her uncle's newspaper article, and nothing in the record suggests Ntangsi attempted to find the newspaper article. We see no reason why "a reasonable trier of fact would be compelled to conclude that the evidence is unavailable." Khrystotodorov, 551 F.3d at 782. The IJ and BIA did not err by requiring Ntangsi to corroborate her claims.

## C.     Asylum, Withholding of Removal, and CAT Relief

Ntangsi argues the BIA erred by denying her claims for asylum, withholding of removal, and relief under the CAT. We review the BIA's determination that an alien is not eligible for asylum for substantial evidence, reversing only where "'the evidence was so compelling that no reasonable factfinder could fail to find the

-8-

requisite fear of persecution.'"  Perinpanathan, 310 F.3d at 597 (quoting Feleke v. I.N.S., 118 F.3d 594, 598 (8th Cir. 2008)).

"Under the Immigration and Nationality Act, the Attorney General has the discretion to grant asylum to a 'refugee.'"  Kratchmarov v. Heston, 172 F.3d 551, 553 (8th Cir. 1999) (citing 8 U.S.C. § 1158(b)(1)).  "A refugee is a person who is unable or unwilling to return home 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"  Id. (quoting 8 U.S.C. § 1101(a)(42)(A)).  To establish a well-founded fear of future persecution, an applicant bears the burden of "demonstrat[ing] a fear that is both subjectively genuine and objectively reasonable."  Id. (citing Cigaran v. Heston, 159 F.3d 355, 357 (8th Cir. 1998)).  An applicant is entitled to a rebuttable presumption of a well-founded fear of future persecution if the applicant establishes past persecution.  See id.

The IJ and BIA made an adverse credibility finding based on specific, cogent reasons, and further determined Ntangsi failed sufficiently to corroborate her claim. The BIA may deny an asylum claim on the basis of an adverse credibility finding.  See Sheikh v. Gonzales, 427 F.3d 1077, 1081 (8th Cir. 2005).  The BIA did not err by determining Ntangsi lacked credibility and therefore Ntangsi did not meet her burden of establishing either past persecution or a well-founded fear of future persecution. Substantial evidence supports the denial of Ntangsi's asylum claim, and Ntangsi's evidence of past persecution was not "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."  Perinpanathan, 310 F.3d at 597 (quoting Feleke, 118 F.3d at 598).

Unlike a discretionary grant of asylum, withholding of removal is mandatory if Ntangsi can show by a "'clear probability' that h[er] life or freedom will be threatened on account of" her political opinion.  See Tolego v. Gonzales, 452 F.3d 763, 766 (8th Cir. 2006) (quoting I.N.S. v. Stevic, 467 U.S. 407, 430 (1984)); 8 U.S.C.

-9-

§ 1231(b)(3)(A). The "clear probability" standard is a higher standard than the standard for establishing eligibility for asylum. See Alanwoko v. Mukasey, 538 F.3d 908, 911 (8th Cir. 2008). Because Ntangsi failed to establish eligibility for asylum, she necessarily failed to meet the higher standard for withholding of removal. See Esaka, 397 F.3d at 1111 (8th Cir. 2005) (citing Krasnopivtsev v. Ashcroft, 382 F.3d 832 (8th Cir. 2004)).

"A denial of relief under the [CAT] is reviewed to determine whether the evidence was so compelling that a reasonable factfinder must have found the alien entitled to relief." Esaka, 397 F.3d at 1111 (citing Ngure v. Ashcroft, 367 F.3d 975, 992 (8th Cir. 2004)). "To receive protection under the CAT, [Ntangsi] must show that she is more likely than not to suffer torture if returned to Cameroon." Id. (citing 8 C.F.R. § 208.16(c)(2)). "An IJ's adverse credibility determination and adverse decisions on asylum and withholding of removal are not determinative of the CAT claim[, but] an IJ can properly consider a claimant's discounted credibility when determining whether he or she will be subject to torture." Id. (citations omitted). Due to the adverse credibility finding, Ntangsi failed to establish she suffered past torture. Ntangsi also failed to present evidence she would be targeted in any way upon return to Cameroon. Ntangsi's evidence was not "so compelling that a reasonable factfinder must have found [Ntangsi] entitled to relief." Id. (citing Ngure, 367 F.3d at 992). The BIA did not err by determining Ntangsi was ineligible for relief under the CAT.

## III. CONCLUSION

We deny the petition for review.

_____

-10-